**UNITED STATES of America,
Appellee,**

v.

**Charles J. GIULIANO, Mario Prezioso
and Chester Zochowski, a/k/a
Chester Gray, Appellants.**

**No. 216, Docket 29077.**

United States Court of Appeals
Second Circuit.

Argued April 22, 1965.

Decided July 9, 1965.

Frances Kahn, New York City, for appellant, Charles J. Giuliano.

Maurice Edelbaum, New York City, for appellant, Mario Prezioso.

Kenneth Kaplan, New York City, for appellant, Chester Zochowski.

Peter Fleming, Jr., Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Robert J. McGuire, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before KAUFMAN, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

The appellant Prezioso in 1961 and 1962 was a cash margin clerk in the stock brokerage firm of Sutro Brothers & Co. in New York City. It was his job to receive securities which were traded by Sutro Brothers in execution of orders placed with its branch offices in Washington, D. C., and Miami, Florida, and which were delivered to Sutro Brothers' New York Office for transfer against payment. It was Prezioso's duty to record their delivery and route them on to another department of Sutro Brothers. He met Zochowski in October, 1961 and they discussed a means of stealing securities which came into Prezioso's hands in the course of his work. In December, 1961, for a payment of $1200, Prezioso misappropriated a $5000 U. S. Treasury Bond, and delivered it to Zochowski, who took it to Hollywood, Florida, cashed it and deposited the proceeds in his own bank account.

In May, 1962, Prezioso took 550 shares of the common stock of American Natural Gas Co. which came to his desk in the course of being delivered to Sutro Brothers. Prezioso turned these shares

over to Zochowski at a restaurant in New York and received from him, as part payment, $5000. Through an accomplice, and co-defendant, named Naidich, Zochowski sold and delivered the shares to another co-defendant, Tritt, of Toronto, Canada for $7000, transporting them to Montreal.

On June 29, 1962 the defendant Naidich had a discussion in New York with another defendant named Wuensche, whom he had met a month or two before when Wuensche had attempted to buy an Alabama bank. At that time each disclosed to the other that he was dealing in stolen securities, and in mid-June Naidich introduced Wuensche to Zochowski. When Naidich met Wuensche on June 29, 1962, he told Wuensche that some securities were available for $5000. Wuensche then turned over $5000 in cash to Naidich, who paid it over to Zochowski, who delivered it to Prezioso, who was unable at that time to deliver the securities.

Wuensche, as president of Holland Construction Co., in December of 1961 had entered into a contract to perform certain dredging work at Stone Harbor Manor, New Jersey, for the defendant Giuliano, whom Wuensche had known since 1958. In April, 1962, Giuliano was in serious financial difficulties and conferred with Wuensche about raising some capital. Through one DiFonzo, who dealt in stolen securities, but who was not a defendant or co-conspirator in this case, Wuensche procured some securities concerning which Wuensche told Giuliano that they "were being lifted from the locker, from the vault of the brokerage firm" and that they "were hot securities and that there was no way of replacing them" and that they were "all bluechip securities—from Sutro Brothers here in New York City."

After the incomplete transaction of June 29, 1962 when Wuensche had paid $5000 which ultimately went into the hands of Prezioso and for which Prezioso had, at the time, no securities to deliver, arrangements were made for a meeting on July 2, 1962 at the Summit Hotel in New York to which Wuensche took Giuliano. At this time DiFonzo procured the delivery to Wuensche of eight $10,000 Treasury Bonds registered in the name of Greenberg. Wuensche passed the bonds over to Giuliano and Zochowski and asked Giuliano if Giuliano could "do anything with these, with the people in New Jersey" to which Giuliano replied, "he didn't know for sure. He'd have to check into it." Wuensche also complained to Zochowski because he had received nothing for the $5000 which he had paid over for securities which Prezioso had failed to deliver.

On July 6, 1962, Zochowski called Prezioso who said he had some stolen securities, available for delivery. That evening at the Summit Hotel in New York Prezioso delivered ten $1000 Food Fair Properties Bonds to Zochowski who handed them over to Wuensche. On the morning of July 7th Wuensche called Giuliano and told him that "he had gotten delivery on something." On July 8th Wuensche and Giuliano met at Giuliano's office at Stone Harbor Manor, New Jersey, and Wuensche displayed all of the ten Food Fair Properties Bonds and said that they were some of the bonds he had gotten from the people in New York City and added, "Look, they're hot, you got to handle them carefully. They're not on any hot sheet yet, to the best of my knowledge and as far as I am concerned, as long as you put them away with people that you know it will be okay." Although Giuliano wanted all ten bonds, Wuensche delivered only four of them to him. Later Giuliano sold the bonds through the Millville Trust Co., Millville, New Jersey, which was unaware that the bonds did not rightfully belong to Giuliano.

On January 7, 1963, an indictment, in four counts, was returned against Giuliano, Prezioso and Zochowski, as well as against several other defendants. The first count charged Prezioso and Zochowski with transporting and causing to be transported in December, 1961, a $5000 U. S. Treasury Bond from New York to Florida knowing it was stolen. The sec-

ond count similarly charged Prezioso and Zochowski, with Naidich and Tritt, with transporting 550 shares of American Natural Gas Co. in May, 1962, from New York to Montreal, Canada. The third count charged Giuliano, Prezioso, Zochowski and Wuensche with the like offense for transporting ten $1000 Food Fair Properties Bonds from New York to New Jersey and Pennsylvania in July, 1962. The fourth count charged all of the defendants, named in the first three counts, with conspiracy to commit the substantive offenses described in those three counts.

Prezioso, Zochowski and Giuliano all pleaded "not guilty" and the case against those three was assigned for trial on May 6, 1964. At that time Prezioso and Zochowski, after an extensive *voir dire* by the court, changed their pleas to "guilty" and testified in Giuliano's case as Government witnesses. On May 13, 1964, the jury found Giuliano guilty on the third count and not guilty on the fourth. On June 12, 1964 Zochowski moved to withdraw his guilty plea on the ground that in participating in the thefts from Sutro Brothers, he was actually acting as an informant for the F.B.I. and, therefore, had no criminal intent. On June 19, 1964 Judge Palmieri sentenced Giuliano to imprisonment for two years. Prezioso on that day asked for an adjournment of the imposition of sentence in his case in order that he could attend to personal matters. Judge Palmieri adjourned the matter to July 7, 1964, and in so doing clearly implied that Prezioso would have to serve a sentence of imprisonment. On July 7th Prezioso orally moved for leave to withdraw his plea of guilty on the ground that his apparent criminal activity was forced upon him by duress and that the disclosure by Zochowski that he was an F.B.I. informant revealed for the first time that he, Prezioso, had been entrapped.

Judge Palmieri assigned the hearings on Zochowski's and Prezioso's motions for July 29, 1964 and they were heard on that day. The motions were denied and each defendant was sentenced. At this hearing evidence was heard concerning Zochowski's connection with the F.B.I., its relationship to this case, and prior knowledge by Prezioso of Zochowski's activity as an informant. Judge Palmieri found, on ample evidence, that despite Zochowski's work with the F.B.I., his activity in connection with the Sutro case was "an independent criminal enterprise having no relationship whatsoever with any branch of the government * * *."

*Giuliano*

■ Although Giuliano admits receiving the bonds, he claims that everything he did was consistent with the actions of a business man acting in good faith, that in fact he did not know that his handling of the bonds was a part of a criminal enterprise and that the government failed to prove beyond a reasonable doubt that he had such guilty knowledge. Wuensche's testimony, however, established that Giuliano knew that Wuensche was dealing in stolen securities and that the Food Fair Properties Bonds themselves were stolen. It was within the province of the jury to believe him or not. United States v. Robbins, 340 F.2d 684, 687 (2d Cir. 1965). We find that there was ample evidence to convince the jury beyond a reasonable doubt of appellant's guilty knowledge.

■ Giuliano contends that he was deprived of due process of law by the "inconsistent verdict" of the jury. Specifically, the claim is that an acquittal on the broad conspiracy count precluded conviction on a substantive count in the same proceeding because the Government relied on the same evidence to prove its case on both counts. The argument is devoid of merit for several reasons. First, no principles of *res judicata* are involved here. United States v. Dovico, 329 F.2d 52 (2d Cir. 1964); cf. Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1946). Second, the verdict was not necessarily inconsistent, for the elements of the two crimes charged in the separate counts are different. See United States v. Robinson,

320 F.2d 880, 881–882 (2d Cir. 1963). As Judge Palmieri pointed out in his instructions, knowledge of the interstate or foreign transportation was required for conviction on the conspiracy count, but such knowledge was not an element of the substantive offense and hence need not be found in order to convict on the substantive count.

Giuliano next contends that Judge Palmieri committed reversible error by failing to marshal the evidence in his charge to the jury. However, there was no request or objection on this point. Moreover, the charge as a whole deals adequately with the evidence, and the court not only stressed the significance of the critical issue of Giuliano's state of mind, but instructed the jury that acceptance of Giuliano's testimony would require an acquittal. Clearly appellant may not be heard to complain of the charge.

Appellant's remaining specification of error is that Zochowski's trial testimony was false and that the prosecution knowingly presented this testimony to the jury without correction, thereby denying him due process of law. Napue v. People of State of Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The argument is based entirely on Zochowski's post-trial testimony that he acted as informant for the F.B.I. in this case. As pointed out above, Judge Palmieri found this testimony unworthy of belief. Moreover, Zochowski's claim that he himself lacked criminal intent in no way amounted to a recantation of his testimony at Giuliano's trial about what actually happened. There is thus nothing to indicate that Zochowski testified falsely.

Assuming that Zochowski's post-trial allegations had been presented to the jury, this would have amounted to no more than cumulative evidence as to Zochowski's credibility. Giuliano's counsel on cross-examination explored and attacked Zochowski's credibility because of Zochowski's role as an F.B.I. informant. Indeed in his closing argument, defense counsel castigated Zochowski as a spy from the F.B.I.

Since there is no error, the judgment below is affirmed.

*Zochowski*

Zochowski's principal contention is that the trial court erred in denying his pre-sentence motion, to withdraw his plea of guilty.[1] Rule 32(d), F.R. Crim.P., provides that after sentence the court may set aside a judgment of conviction and permit the defendant to withdraw his plea "to correct manifest injustice." The fair implication is that pre-sentence motions are to be treated with greater liberality. Kadwell v. United States, 315 F.2d 667, 670–671 (9th Cir. 1963); Gearhart v. United States, 106 U.S.App.D.C. 270, 272 F.2d 499, 502–503 (D.C.Cir.1959). Indeed the Supreme Court has said that on timely application, the court will permit withdrawal of the guilty plea in the exercise of its discretion "if for any reason the granting of the privilege seems fair and just." Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).

A criminal defendant, however, has no absolute right to withdraw a plea of guilty. United States v. Panebianco, 208 F.2d 238 (2d Cir. 1953), cert. denied 347 U.S. 913, 74 S.Ct. 478, 98 L.Ed. 1069 (1954). He has the burden of establishing grounds for the withdrawal, United States v. Smiley, 322 F.2d 248 (2d Cir. 1963), and the determination of whether that burden has been met rests within the discretion of the trial judge, whose decision is reversible only if clearly erroneous. United States v. Hughes, 325 F.2d 789 (2d Cir. 1964).

Appellant urges several reasons why in the interests of fairness and justice

---

1. Zochowski's Jencks Act point was raised at the hearing by Prezioso and will be discussed in connection with that appellant.

Judge Palmieri abused his discretion in denying the requested relief. He alleges that he is innocent of the crime of which he was accused because of his role as F.B.I. informant. Moreover, a convincing argument can be made that the government would not be prejudiced at trial by a premature disclosure of its evidence of guilt at Giuliano's trial, for there the critical issue of whether Zochowski was justified in believing that his activities were sanctioned by the F.B.I. was not involved. Finally he claims that since he failed to confide fully in his lawyer respecting his F.B.I. activities, counsel was precluded from receiving a proper evaluation of possible defenses to the charge.

In United States v. Hughes, supra, at 792, this court rejected the contention that an allegation of innocence coupled with a showing of no unfairness to the government necessarily entitled a defendant to withdraw his plea. Appellant's additional argument—that he failed to confide fully in his lawyer and thus pleaded guilty without proper evaluation of the courses open to him—is without merit. He had more than adequate opportunity to consult with counsel, and the facts on which he bases his belated claim of innocence were available to him prior to his plea. Moreover, Judge Palmieri found Zochowski's allegation as to his F.B.I. role in this case totally incredible. It is thus inferable that Zochowski's failure to confide in his lawyer was not the result of inadvertence. Under the circumstances disclosed here, it would strain credulity to hold that Zochowski has advanced a reason which would make the granting of the motion appear "fair and just."

An extremely careful *voir dire*, conducted at the time the guilty plea was entered, disclosed that the plea was entered voluntarily, with full knowledge of what was involved, and was in no way the result of fear, fraud or ignorance. Kercheval v. United States, supra, at 224, 47 S.Ct. at 583. By any standard the plea was valid and Judge Palmieri's refusal to permit its withdrawal was not an abuse of discretion.

The conviction of Zochowski is affirmed.

*Prezioso*

■ Prezioso's belated entrapment defense is based on alleged 32(d) motion. He contends that Zochowski's belated revelations furnished him with an entrapment defense and that, if he and his attorneys had been aware of the possibility of such a defense, he would not have pleaded guilty.

Prezioso's belated entrapment defense is based on alleged coercion by Zochowski acting in the capacity of an F.B.I. informant. But the facts, on which the alleged coercion was based, were known to appellant before he made his guilty plea. Although he claimed ignorance of the specifics of Zochowski's allegations, he admitted at the hearing on his motion that almost one year before the guilty plea he learned from one Hess that Zochowski was an informer in the Sutro case, although Prezioso himself never told his attorneys about it. Prezioso at all times had the full assistance of counsel. Certainly there was enough to put him and his attorneys on inquiry concerning the possibility that the duress defense, which he freely and knowingly waived, might be developed to raise the issue on entrapment. Despite the policy of liberality, we would be reluctant to find that Judge Palmieri abused his discretion and to hold that Prezioso may assert surprise as a valid basis for a change of plea, where such a claim rests upon a failure to tell his lawyers something of obvious interest and where the only extenuating circumstances pointed to are the alleged generality of the information supplied by Hess, coupled with appellant's claimed lack of sophistication and thoroughly shaken condition.

There is an additional circumstance which militates against the pre-sentence policy of liberality and supports affirmance. Zochowski's allegations were a

matter of public record on June 19th when Prezioso requested a one month adjournment of sentence. Yet no request was made to withdraw the guilty plea at that time. Instead request was made only after the court made it clear that Prezioso could expect to serve some time in prison, thus putting to rest any hope of receiving a suspended sentence. To permit the withdrawal of the plea at this stage would encourage entering the plea merely as a trial balloon to test the attitude of the trial judge. This stratagem has been properly condemned. United States v. Weese, 145 F.2d 135 (2d Cir. 1944). We hold that Judge Palmieri acted within his discretion in denying the motion to withdraw the plea of guilty.

■ Appellant's final contention, joined in by Zochowski, is that he was denied a fair hearing on his motion to withdraw the plea of guilty in that the court improperly deprived him of access to certain government notes and records. Specifically, Prezioso moved for production of Agent Clinkscales' notes relating to his conversations with Zochowski and the records of payments received by the latter from the F.B.I.

■ The motion was properly denied. The plain language of the Jencks Act, 18 U.S.C. § 3500, and consideration of its underlying purpose, compel the conclusion that the discovery procedure therein outlined applies only to statements that must be produced after a witness testifies at the trial. See 1957 U. S. Code Cong. & Admin. News 1869. United States v. Abrams, 29 F.R.D. 178, 183 (S.D.N.Y. 1961); United States v. Tane, 29 F.R.D. 131, 133 (E.D.N.Y.1962); United States v. Rosenberg, 157 F.Supp. 654 (E.D.Pa. 1958). Moreover, the material sought was not relevant to the central question before Judge Palmieri, i. e., whether there were credible, substantial reasons for not raising the informant and entrapment defenses at the time the guilty pleas were entered or within a reasonable time thereafter.

The conviction of Prezioso is also affirmed.