UNITED STATES of America, Appellee,

v.

Donald EUCKER et al., Defendants-Appellants.

Nos. 309, 313 and 315, Dockets 75–1246, 75–1280 and 75–1303.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1975.

Decided March 8, 1976.

Jerome J. Londin, New York City (Carro, Spanbock, Londin, Rodman & Fass, New York City, Kenneth A. Lapatine, New York City, of counsel), for appellant Anderson.

Michael Rosen, New York City (Saxe, Bacon & Bolan, P. C., New York City; Roy M. Cohn, New York City, of counsel), for appellant Sloan.

Stanley S. Arkin, New York City (Stanley S. Arkin, P. C., New York City, Mark S. Arisohn, New York City, of counsel), for appellant Eucker.

Audrey Strauss, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., Robert J. Costello,

Asst. U. S. Atty., John C. Sabetta, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In June 1970, Orvis Brothers, a Wall Street brokerage firm, closed its doors, leaving debts in excess of four million dollars. On September 10, 1974, appellants, officers of that company, were indicted in the Southern District of New York, charged in nine counts with conspiracy and substantive violations of the federal securities law. Only Anderson went to trial,[1] and he was convicted on the conspiracy count alone. Seven counts were dismissed by the trial judge, and the jury acquitted Anderson on the eighth. Sloan pleaded guilty to the conspiracy count, and Eucker pleaded guilty to a substantive count charging illegal hypothecation of customers' securities, reserving his right to appeal from the District Court's refusal to dismiss this count for failure to allege a crime.

Anderson appeals his conviction, asserting a number of substantive and procedural errors. Sloan appeals from District Judge Knapp's denial of his motion to withdraw his guilty plea, which motion was predicated upon the prosecutor's alleged failure to "go to bat" for Sloan with the sentencing judge as had been promised. Eucker appeals from the judgment based on his plea of guilty, in accordance with his reservation of the right to do so.

### The Background for the Charges

Appellants were partners in Orvis Brothers, which had been in the securities business for many years. Sloan was the managing partner; Anderson was chairman of the Executive Committee, and Eucker, a member of the Executive Committee, was in charge of operations. In early 1969, Orvis was experiencing difficulty in maintaining the 20:1 capital ratio required by the rules of the New York Stock Exchange,[2] and its Executive Committee cast about for means of increasing its apparent capital. According to the Government's proof, some members cast too widely.[3]

The Orvis account most susceptible to manipulation was that of the Clinton Oil Company of Wichita, Kansas, whose president, Realto Clinton, was a close friend of appellant Sloan. Orvis was a broker for the Clinton Company in the sale of oil and gas exploration investment units, for which it received a six percent commission payable at the time the fourth and final installment of the purchase price of each unit was paid. Early in 1969, Orvis, at the suggestion of Sloan and with the knowledge of Anderson, began treating projected commissions as current capital. A fictitious customer account was created and $797,100 in projected but unearned commissions was entered in this account. To balance this unsecured debit, some stock of Realto Clinton in the possession of Orvis was wrongfully credited to the same account. Anderson learned of this transfer in September 1969.

A second fictitious addition to capital was created out of the sale of Clinton units by failing to record the forty percent sales commission payable to Orvis' employees. The decision not to deduct these commissions was known to Anderson and the other members of the Executive Committee.

In 1969, Clinton Oil Company sent Sloan 4,344 shares of Clinton stock with directions that it be sold to partners of Orvis, and Realto Clinton sent 5,000 shares for sale to a third party. These shares were posted in

1. In addition to appellants, two other defendants were indicted. One pleaded guilty to conspiracy and did not appeal. The other was tried with Anderson and was acquitted.

2. Liabilities are not permitted to exceed twenty times the amount of capital. N.Y.S.E. Rule 325.

3. There is substantial dispute as to many of the facts recited herein; but for purposes of this appeal, we must construe the proof most favorably to the Government. *McCarthy v. United States,* 473 F.2d 300, 302 (2d Cir. 1972).

the Orvis' books as if they were a gift rather than a consignment, and Anderson learned of this posting in August 1969.

In the same month, it was discovered that the firm's own trading account had sustained an unexpected loss of $500,000, and Sloan called his friend Clinton to seek additional capital. Clinton agreed to, and did, forward $500,000. However, this was in payment of commissions for sale of Clinton oil and gas units and not as a loan to Sloan. Despite this fact, the money was placed in the firm's trading account, and no part of it was used to offset the $797,100 carried on the books as earned commissions. Although Anderson played no part in this transaction, he was aware of it.

In 1969, Orvis owned eighty thousand shares of Clinton Oil Company stock which could be evaluated at only seventy percent of market value for capital ratio purposes under the rules of the New York Stock Exchange. In August, Sloan told his partners that this stock had been sold to the Clinton Oil Pension Fund and recorded the sale in the partnership books at one hundred percent of value. Although Clinton's general counsel informed Orvis by telegram that this "sale" had not occurred, and no payment was ever made, it remained on the books of Orvis as an obstensibly valid transaction.

At the time that this purported sale was taking place, general counsel for Clinton was in New York, attempting to ascertain the financial situation at Orvis. Anderson advised him that "there is no problem with the company" and that the capital ratio was "between 12 and 15 at that time, that the auditing firm was there at the moment and everything was all right." Clinton's counsel was not informed of the "sale" of Clinton stock and did not learn about it until his return to Kansas, at which time he promptly disaffirmed it. On a second visit made in December 1969, Clinton's counsel was again assured by Anderson and Sloan that there was no cause for concern over the financial condition of Orvis.

Machinations at Orvis were not confined to the Clinton account. In the fall of 1968, Anderson attempted to negotiate the sale of nineteen thousand shares of unregistered International Controls Company stock from customers of Orvis to a mutual fund called the Fund of Letters. After Orvis had purchased the stock from its customers for almost $500,000, the Fund of Letters refused to accept it because International Controls Company would not register the stock. Despite this refusal, the cost of the stock was not charged against capital but was carried for fourteen months on the books of Orvis as a customer cash account with a settlement date of five business days.

Also, during 1968 and 1969, Orvis began to use fully paid for customers' securities as collateral for partnership bank loans. When Haskins & Sells, the company auditor, was securing information required for Orvis' October 1969 Form X–17A–5 report of financial condition to the New York Stock Exchange and the Securities and Exchange Commission (SEC), approximately six million dollars in customers' securities were so hypothecated. Haskins & Sells was advised, however, that this was being corrected, and so stated in its report. The advice and the report were both erroneous. By May 1970, the hypothecation of fully paid for customers' securities exceeded six and one-half million dollars. The Government introduced evidence that Anderson, by that time, was fully aware of what was being done but urged that this knowledge be kept from the other members of the Executive Committee.

Information concerning all of the manipulations outlined herein was kept from Haskins & Sells, although the X–17A–5 report was reviewed in detail at a meeting with representatives of the auditor which was attended by appellants. As a result, the report which was filed indicated that Orvis was not in any financial difficulty, and its capital ratio was satisfactory.

*The Statutes Involved*[4]

---

**4.** The securities statutes referred to have since been renumbered. *See* Pub.L. No. 94–29.

15 U.S.C. § 78q(a) provides in part that every registered broker shall keep "such accounts, correspondence, memoranda, papers, books, and other records, and make such reports, as the [Securities and Exchange] Commission by its rules and regulations may prescribe as necessary or appropriate in the public interest or for the protection of investors."

15 U.S.C. § 78ff(a) provides in substance that anyone "who willfully violates [§ 78q(a)] or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required," or "who willfully and knowingly makes, or causes to be made, any statement in any application, report, or document required to be filed under this chapter or any rule or regulation thereunder . . . which statement was false or misleading with respect to any material fact, shall upon conviction be fined . . ., or imprisoned . . . or both." This section further provides, however, that no person shall be subject to imprisonment thereunder "for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation."

15 U.S.C. § 78h(c) makes it unlawful for a broker, in contravention of the rules and regulations of the SEC, to hypothecate any customer's securities "under circumstances (1) that will permit the commingling of his securities without his written consent with the securities of any other customer, (2) that will permit such securities to be commingled with the securities of any person other than a bona fide customer, or (3) that will permit such securities to be hypothecated, or subjected to any lien or claim of the pledgee, for a sum in excess of the aggregate indebtedness of such customers in respect of such securities."

18 U.S.C. § 371 prohibits conspiracies to commit any offense against the United States. It provides for a fine, imprisonment or both, except where the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, in which event the punishment for the conspiracy cannot exceed the maximum punishment provided for such misdemeanor.

The SEC has elaborated on the provisions of the Securities Exchange Act with its own rules and regulations. Rules 17a–3 and 4, 17 C.F.R. §§ 240.17a–3, 4, detail the business records required to be kept and preserved by securities dealers. Rule 17a–5, 17 C.F.R. § 240.17a–5, requires that brokers file Form X–17A–5 financial reports and specifies the contents of these reports. Rule 8c–1, 17 C.F.R. § 240.8c–1, prohibits the hypothecation of securities, in language similar to that of 15 U.S.C. § 78h(c).

### Anderson's Appeal

Anderson was convicted of conspiracy to violate §§ 78ff(a) and 78q(a) and Rules 17–a–3, 4 and 5. As reduced by the trial judge, the charge of wrongdoing submitted to the jury was that Anderson conspired to file an X–17A–5 report with the SEC which was false, in that statements of the accounts of Orvis and its customers were inflated and the improper hypothecation of customers' securities was wrongfully stated to have been corrected.

Although appellant argues that he was not a member of any conspiracy, but at most a silent onlooker, this argument is not persuasive. Where the goal of a conspiracy can be reached only through deception and concealment, silence which is designed to conceal may indicate an intention to conspire. *United States v. Colasurdo*, 453 F.2d 585, 592–93 (2d Cir. 1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). The trial court instructed the jury that to be an act in furtherance of a conspiracy, "silence must be a planned act" and that if intended to facilitate the conspiracy, it can be an overt act in pursuance thereof. This was a correct statement of the law. *United States v. Freeman*, 498 F.2d 569, 575 n. 10 (2d Cir. 1974); *Forman v. United States*, 259 F.2d 128 (9th Cir. 1958), *modified*, 261 F.2d 181 (1959) (per curiam), *aff'd* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960).

While the concealment which occurred in this case may have been intended in part to

deceive potential sources of capital, it was also clearly designed to delude the New York Stock Exchange and the SEC. Unless Orvis could maintain its capital ratio at 20:1 or better, it was not going to continue long in operation. The *sine qua non* of the fraud on these agencies was the filing of the false Form X–17A–5, and the jury could well find that the concealment of the true facts required for this report was as much a part of its preparation as the writing on the document. It could also decide that Anderson, who stood silently by as the false contents of the X–17A–5 report were reviewed with the company auditor in preparation for filing, was not an innocent bystander.

Moreover, the Government established that Anderson did more than simply remain silent. At a meeting of the Executive Committee in April 1969, after he was told of some of the improper bookkeeping practices, Anderson instructed the partner in charge of financial operations, to make sure the firm stayed in business. Anderson also deliberately misled Clinton Oil Company's general counsel concerning the financial position of Orvis. These, the jury could find, were acts of a vocally active participant in the alleged conspiracy. In short we find that there was substantial evidence in support of the jury's verdict.

■ We find no error in the District Court's evidentiary rulings. Although the Government did not contend that Anderson was aware of the allegedly improper hypothecation of customers' securities at any time before the X–17A–5 report was filed, proof of such hypothecation was, nonetheless, properly admitted. If the filing of false information concerning hypothecation was within the scope of the conspiracy, Anderson, as one of the conspirators, cannot avoid the consequences by claiming lack of knowledge. *United States v. Manton,* 107 F.2d 834, 848 (2d Cir. 1939), *cert. denied,* 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940). The Government contended that the conspirators misrepresented to the SEC that the situation involving hypothecation had been corrected, and it was necessary for the Government to establish that the correction

had, indeed, not taken place. Whether, as appellant now asserts, the Government failed to prove that the hypothecation was unlawful is beside the point; the SEC was entitled to truthful information. The wrongful act charged was the filing of the false report, not the hypothecation.

Similar reasoning supports the admissibility of evidence concerning the Fund of Letters transaction. The alleged conspiratorial act submitted to the jury was the false handling of the Fund of Letters account as a secured cash account in the X–17A–5 report, and proof of the underlying facts was necessary to establish the falsity. Anderson's asserted lack of knowledge concerning bookkeeping details did not require exclusion of this evidence.

■ Anderson contends that he was denied his Fifth Amendment right to due process because he was not indicted until just prior to the running of the five year statute of limitations. Appellant did not raise this issue until after his conviction and waived his right to do so. *United States v. Beigel,* 370 F.2d 751, 757 (2d Cir.), *cert. denied,* 387 U.S. 930, 87 S.Ct. 2049, 18 L.Ed.2d 989 (1967). A defendant cannot wait to see whether the verdict is to his liking before arguing that he was prejudiced by delay.

In any event, we would be disinclined to reduce the period of limitations prescribed by Congress in the absence of some proof that the Government utilized the delay as "an intentional device to gain tactical advantage over the accused" and that defendant was prejudiced thereby. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971). Appellant failed to show any contrived procrastination by the Government and could point to no prejudice established beyond mere conjecture. We see no error here.

■ There is likewise no merit to Anderson's contention that he was further deprived of his Fifth Amendment rights by the Government's failure to call before the grand jury a witness whose testimony would have tended to weaken the Govern-

ment's case. In advancing this argument, appellant pays little heed to the fact that the testimony of the witness, who was the attorney for another defendant, would have been, to a large extent, privileged. Moreover, he ignores the well established rule that the Government need not call all available witnesses before the grand jury. *United States v. Koska*, 443 F.2d 1167, 1169 (2d Cir.) (per curiam), *cert. denied*, 404 U.S. 852, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971).

 Anderson's final claim of error relates to his sentence of imprisonment. As pointed out above, 18 U.S.C. § 371, the conspiracy statute, provides that where the object of a conspiracy is a misdemeanor, the punishment for the conspiracy cannot exceed the maximum punishment for the misdemeanor. 15 U.S.C. § 78ff(a) provides that no person shall be subject to imprisonment thereunder for the violation of any rule or regulation of which he had no knowledge. This means that under 18 U.S.C. § 1 the violation of an unknown rule or regulation of the SEC can be no more than a misdemeanor,[5] and the violator can receive no more than a fine.

Anderson contends that he was convicted under § 78ff(a) of a violation of Rules 17a–3, 4 and 5. The Government, on the other hand, argues that he was convicted for a violation of the statute itself. The Government is correct. The charge of wrongdoing submitted to the jury was not the failure to keep and preserve records and file reports as required by the rules; it was the making of false and misleading statements in a report, which conduct was specifically proscribed by § 78ff(a). Anderson is therefore not entitled to rely on the "no knowledge" portion of that statute. *United States v. Colasurdo, supra*, 453 F.2d at 594.

### Sloan's Appeal

 The Assistant United States Attorney who represented the Government on the trial promised Sloan that if he pleaded guilty and cooperated in the preparation and presentation of the case against Anderson, the Government would "go to bat" for him. Thereafter, Sloan pleaded guilty. However, his cooperation consisted of presenting the prosecution with a version of the facts in which he attempted to completely exculpate himself from any wrongdoing. Under these circumstances the Government was unwilling to vouch for his credibility and did not call him as a witness. The prosecutor also did not "go to bat" for him, because he did not consider Sloan's willingness to testify falsely to be cooperation.

The District Court found that this decision was made in good faith and refused to permit Sloan to withdraw his plea. The District Court's determination was discretionary, *United States v. Giuliano*, 348 F.2d 217, 221 (2d Cir.), *cert. denied*, 382 U.S. 939, 86 S.Ct. 390, 15 L.Ed.2d 349 (1965), and we see no reason to disturb it. Appellant cannot claim the benefit of an agreement where he himself is in default. *United States v. Nathan*, 476 F.2d 456, 459 (2d Cir.) *cert. denied*, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

### Eucker's Appeal

 Count Nine of the indictment, to which Eucker pleaded guilty, charged that he:

unlawfully, wilfully and knowingly, did, directly and indirectly, hypothecate and arrange for and permit the continued hypothecation of fully paid for securities carried for the account of customers of Orvis under circumstances that permitted such securities to be hypothecated and subjected to liens and claims of pledges in amounts up to $7,000,000.00. (Title 15, United States Code, Sections 78h and 78ff and 17 C.F.R. Section 240.8c–1; Title 18, United States Code, Section 2.)

Eucker argues that this count fails to allege an essential element of the crime charged, to wit, that the total amount of

---

**5.** Under 18 U.S.C. § 1, offenses punishable by death or imprisonment exceeding one year are felonies; all others are misdemeanors.

securities hypothecated was in excess of the aggregate customer indebtedness to Orvis with respect to such securities. In making this argument, Eucker assumes that he is charged with violating subsection 3 of 15 U.S.C. § 78h(c).

The Government says, on the other hand, that it never intended to proceed under subsection 3 and that it was really proceeding under subsection 1, which prohibits the commingling of a customer's securities without his written consent with the securities of any other customer.[6] The Government also contends that the hypothecation of fully paid for customers' securities constitutes a fraud in violation of 15 U.S.C. §§ 78j(b), 78o(c) and 77q(a).

Because appellant Eucker admitted at the time of his plea that he caused or permitted fully paid customers' securities to be hypothecated as charged in the indictment, we could on this appeal go directly to the merits of the Government's contention. The statutory reference in the indictment obviously includes all three subsections of § 78h(c). With regard to the other statutes upon which the Government now seeks to rely, if an indictment properly charges an offense, it is sufficient, even though an inapposite statute is referred to therein. 1 Wright, Federal Practice and Procedure, § 124 *et seq.* (1969); *United States v. Calabro,* 467 F.2d 973, 981 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973). Clearly the Government is not required to rely upon that statutory provision which the defendant chooses to select.

However, a defendant's plea should be made with an understanding of the nature of the charge against him, *Irizarry v. United States,* 508 F.2d 960, 963–66 (2d Cir. 1974), and there is a possibility that this did not occur in this case. Pursuant to the authority given us by 28 U.S.C. § 2106, we are therefore remanding the case of the appellant Eucker to the District Court so that appellant may apply to that court for

leave to withdraw his plea of guilty on the ground that it was not knowingly made as required by Fed.R.Crim.P. 11. If such an application is made, the district court shall grant the motion upon appropriate conditions if it finds, bearing in mind the Government's contentions, that appellant's plea was made without knowledge of the possible applicability of 15 U.S.C. §§ 78h(c)(1) and (2), 78j(b), 78o(c) and 77q(a). If this application is not made within thirty days from the date of remand, however, we will conclude that appellant's plea was, in fact, made with an understanding of the possible applicability of the above sections. In the event that application is not timely made, or if the District Court denies appellant's motion for leave to replead, the matter shall be returned to this Court for a decision on the merits. If the motion is granted, this appeal will be dismissed as moot.

### Disposition of Appeal

The judgments of conviction of appellants Anderson and Sloan are affirmed. The case of appellant Eucker is remanded to the District Court for further proceedings in accordance with this opinion.

MOORE, Circuit Judge (concurring and dissenting):

I concur in the affirmance of Anderson's and Sloan's convictions, but dissent from the majority's decision to remand as to Eucker.

A defendant should not plead guilty to charges of which he is ignorant or about which he is confused. However, the facts in this case belie any argument that Eucker was either ignorant or confused at the time of his plea. Eucker was a member of the Executive Committee of Orvis Brothers, the partner in charge of operations, and a man obviously sophisticated in his knowledge both of the securities industry and its ex-

---

**6.** For some unknown reason, the Government makes no mention of subsection 2 of 15 U.S.C. § 78h(c) which prohibits commingling regardless of consent with the securities of anyone other than a bona fide customer, *i. e.,* presumably with those of the broker himself.

tensive regulation by the federal government. Count Nine of the indictment expressly referred to 15 U.S.C. § 78h,[1] all three subsections and its various subparts of § 78h were obviously included thereby.

Eucker was represented by counsel throughout the litigation at bar. He pleaded guilty on the express understanding that he would appeal that very plea.[2] He made no claim of ignorance or confusion before the district court[3] or on appeal to this Court.[4] He has alleged only that the Government failed to draft an indictment correct in all its technical form and detail, thereby rendering that indictment "fatally defective".[5] Eucker does not claim that he failed to understand the charges against him;[6] he merely posits that the law should not apply to him because the *text* of the indictment preceding the citation to § 78h was largely taken from a subsection in the statute which could not apply to his particular acts.

The majority properly concludes that the Government is not compelled to abide by a defendant's selective interpretation of his indictment. However, by remanding the case at this point, the majority undermines its own holding. The remand prolongs this litigation unnecessarily, and its effect is to clothe Eucker with an innocence which the facts plainly refute. Eucker should not be given the opportunity—at this late stage in the proceedings—to plead a state of ignorance or helpless confusion which is disingenuous and completely contrary to the record.

I would reach the merits of his appeal at this time and would affirm his conviction on the grounds that the indictment adequately set forth the charges to which he pleaded guilty.

1. Reference in the majority opinion, at pp. 256–257, to §§ 78j(b), 78o(c), and 77q(a) is inapposite in view of the facts that Eucker was indicted under and pleaded guilty to § 78h; was convicted under § 78h; and has predicated his appeal on the sufficiency of the indictment's recitation of § 78h.

2. Appellant Eucker's appendix at 50. All references to "appellant" herein are to Eucker.

3. In urging that appellant be permitted an immediate appeal from his plea of guilty, Eucker's counsel argued that the statute was vague, an argument which was given weight by the district court. [Transcript of proceedings, March 14, 1975, Appellant's appendix at 29: ". . . I agree with your Honor that the statute is not a model of clarity . . . I believe your Honor understands my intention with respect to the plea that is to be offered today which is to have my client, Mr. Eucker, plead to the indictment as drafted, and of course denying that the aggregate net indebtedness of all the customers exceeded the amount of the hypothecation, and then taking that up upstairs for a hopeful clarification of what the statute means."] However, it should be noted that appellant has *not* raised that issue on appeal; on the contrary, he fails even to cite it as a basis for the district judge's decision respecting appealability of the plea—a curious omission. [Appellant's brief at 6: "Eucker moved to dismiss Count 9 upon the ground that the count failed to allege an essential element of the crime charged, to wit, that the total amount of securities hypothecated was in excess of the aggregate indebtedness to Orvis of all customers on all of their securities carried for their account by Orvis. The motion to dismiss Count 9 was denied."] This, in addition to Eucker's own statements before the district court, *see* n. 5, *infra*, give to his counsel's statements about vagueness the distinct appearance of a tactical maneuver as opposed to the legitimate expression of any true "confusion" felt by Eucker respecting the meaning of either § 78h or the charges brought thereunder.

4. *See* "Questions Presented", Appellant's brief at 1–2.

5. Appellant's brief at 1.

6. The following excerpt from the proceedings before the district court is instructive:

"By the Clerk:
 Q. Are you the Donald Eucker in the case presently before this Court?
 A. Yes, I am.
 Q. Do you waive formal reading of the indictment in this matter?
 A. Yes, I do.
 Q. *Do you fully understand the charges in Count 9 of this indictment?*
 A. *Yes, I do.*
 Q. How do you wish to plead to that count?
 A. I wish to plead guilty."
Transcript of proceedings, March 14, 1975, Appellant's appendix at 37–38 (emphasis supplied).