UNITED STATES of America,
Plaintiff-Appellee,

v.

Dunstan Wellington BURNETT,
Defendant-Appellant.

No. 455, Docket 81–1340.

United States Court of Appeals,
Second Circuit.

Submitted Dec. 1, 1981.

Decided Feb. 1, 1982.

Michael L. Tabak, Asst. U. S. Atty., John S. Martin, Jr., U. S. Atty., S.D.N.Y., New York City, for plaintiff-appellee.

Clarence B. Jones, New York City, for defendant-appellant.

Before FRIENDLY, OAKES and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

On January 5, 1976 defendant Dunstan Wellington Burnett and two co-defendants were indicted on twenty-five substantive counts of immigration fraud and one count of conspiracy. Defendants were charged with providing alien residents of the United States with fraudulent job offer forms which they knew would be submitted to the Government in support of applications for permanent resident status in the United States. Defendant Burnett pleaded not guilty to the indictment and was scheduled for trial on April 26, 1976. On that date, however, Burnett requested permission to plead guilty to the conspiracy count. It was understood that in return the Government would not oppose dismissal of the twenty-five substantive fraud counts. The plea was accepted by the district judge in the robing room on the record while a panel of prospective jurors waited outside in the court room.

After several adjournments, defendant appeared before the district court for sentencing on December 15, 1976. On that date he requested additional time in order to travel to his native Jamaica and attempt to secure funds to make restitution prior to sentencing. The court granted a one-week

adjournment, until December 22, 1976, and directed the Government, over its objection, to return defendant's passport. On December 22, 1976 defendant did not appear for sentencing and a bench warrant was issued.

Apparently defendant next returned to the United States in the summer of 1977, and arrangements were made for him to appear for sentencing on August 3, 1977. On that date defendant again failed to appear, and remained at large until finally arrested while attempting to re-enter the United States from Canada on March 10, 1981.

When Burnett appeared for sentencing on April 29, 1981 he requested leave to withdraw the guilty plea entered on April 26, 1976. Defendant's counsel thereupon moved to be relieved. The district judge granted the latter motion, and sentencing was postponed until May 27, 1981. This date was later adjourned to June 12, 1981 in order to give defendant's new counsel an opportunity to file papers on defendant's behalf. On June 12, 1981 defendant filed a written motion, with supporting affidavits, seeking to withdraw his guilty plea. On July 25, 1981 Judge Cooper denied defend-

ant's motion, and, on August 13, 1981 he sentenced him to a three year term of imprisonment.

Defendant argues for reversal of the district judge's order denying his motion for leave to withdraw his guilty plea on the ground that the plea proceeding held on April 26, 1976 did not meet the requirements of Rule 11(c)(3), Fed.R.Cr.P.[1] Appellant contends that the plea proceeding was deficient in that the district judge failed to establish that there existed a factual basis for the plea and failed to personally address the defendant throughout the plea proceeding. In addition, it is contended that the court failed to inform the defendant that he had a right to remain silent; that he had a right to be tried by a jury; that he had a right to confront and cross-examine witnesses against him; and that he had a right to persist in his plea of not guilty.

▮ All but the latter two claims are wholly without merit. From the record, we are satisfied that the trial judge did personally address defendant and did properly determine that there existed a factual basis for the plea being offered.[2] In addition, he

---

1. Rule 11(c), Fed.R.Cr.P., provides:

   "(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

   (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

   (2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

   (3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

   (4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

   (5) that if he pleads guilty or nolo contendere, the court may ask him questions about

   the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement."

2. The record of the plea hearing conclusively demonstrates that Judge Cooper addressed the defendant personally throughout that hearing. The record also reveals that he adequately determined that there existed a factual basis for the entry of defendant's guilty plea. Beginning at page 5 of the transcript of the proceedings held on April 26, 1976 the following colloquy took place:

   "THE COURT: You know what it charges you, the conspiracy count?
   DEFENDANT: Yes.
   THE COURT: Tell me in your own words what it is that you did in connection with this particular conspiracy count.
   DEFENDANT: Well, he worked for me as a field agent. He sponsored for me. I discovered that a secretary he wanted to employ for himself. I did submit the paper through my office to Newfield and Leifer, but I did discover later on he had no intention of employing this person, and I did not inform Mr. Leifer.

adequately informed appellant that he had a right to be tried by a jury and to remain silent.[3] In a strict sense, however, the district judge failed to comply fully with the provisions of Rule 11(c)(3) in that he did not specifically inform appellant *in haec verba* that he had a right to persist in his plea of not guilty (although this was the clear import to be drawn from the fact that a panel of 60 venire persons was then in the court-room awaiting the commencement of the jury selection process), and he did not inform him that he had a right to confront and cross-examine witnesses against him.

Defendant does not contend on appeal that the trial judge's omissions caused him any prejudice. He makes no claim that he did not understand his rights or that he would not have pleaded guilty had they been explained to him more fully. While

```
                *   *   *   *   *   *
THE COURT: Would you care to ask him
questions that would bring out fully what it
is that he wishes to say to me.
BY MR. RABIN:
Q:  Did you have a meeting with Mr. New-
field and Mr. Leifer?
A:  Yes.
Q:  Isn't it a fact that they were paying you
and your agency to obtain sponsors for
aliens?
A:  Yes.
Q:  Isn't it a fact that you employed agents,
also known as runners, to get these spon-
sors?
A:  Yes.
Q:  Isn't it a fact that your agents or runners
obtained these sponsors by having them sign
the proper Immigration forms, but in blank?
A:  Yes.
Q:  And these forms would be submitted to
Newfield and Leifer?
A:  Yes.
Q:  You knew these forms were going to be
submitted to the Immigration Department?
A:  Yes.
Q:  Isn't it a fact that you had reason to
believe that certain times some sponsors
were not true sponsors?
A:  Yes.
Q:  You took no affirmative action?
A:  Yes, sir.
THE COURT: Is there anything the Govern-
ment would like to ask him? Does that cover
it?
MR. WEINBERG: The Government believes
that consistent with a valid plea to the
charge in Count 1 Mr. Burnett should ac-
knowledge if it is true that on occasion he
would receive sponsors from his runners or
agents and he had reason to believe that
these sponsors were not really going to hire
the aliens, and yet he chose to ignore that
fact and still submitted the sponsor's name to
the law firm of Newfield & Leifer who, in
turn, submitted the sponsor's application to
the Department of—
THE COURT: In my estimation he has al-
ready so [sic]. Is that not so?
DEFENDANT: Yes.
THE COURT: That's so, what Mr. Weinberg
of the Government has said? You admit
that?
DEFENDANT: Yes.
```

---

3. This Court has previously stated that in amending Rule 11(c) it was Congress' intent to divest district court judges of discretion with respect to the substantive rights of which a criminal defendant who offers to plead guilty to charges pending against him must be informed, but not to dictate the precise language to be used in performing this duty. *U. S. v. Saft*, 558 F.2d 1073, 1079 (2d Cir. 1977). We find that the trial judge adequately apprised appellant of his right to a jury trial. At page 3 of the transcript of the April 26, 1976 hearing the judge stated, "As you know, the panel of jurors is outside in the courtroom." On the same page he says "you are entitled to a trial." On page 4 defendant is told that "the jury would be told to return a verdict of guilty or not guilty with regard to each one of these separate charges against you." Further, on page 10, the judge tells appellant that "[W]hen you plead guilty ... that's a confession; ... There is no need for a jury. A jury is there to find out whether you did what you are charged with...." Finally, on page 14 of the transcript the judge says, "there is a jury out there. This case would take a few days to try."

Appellant also contends that the judge below did not adequately inform him that at trial he would have a right to remain silent. The record of the plea proceeding belies this contention. At pages 8 and 9 of the transcript the judge asked defendant, "[Y]ou understand if you went to trial the burden of proving you guilty beyond a reasonable doubt would be on the Government? No defendant in any criminal case has to help the Government or has to testify or has to call any witnesses. You have a perfect right to say to yourself or to them, 'You charged me with something; now go ahead and prove it and prove it beyond a reasonable doubt.'" And on page 9 the judge says, "you can sit there with your attorney, not take the stand, not present any evidence, not call any witnesses, not introduce any papers, nothing, and the Judge has to tell the jury they cannot hold that against you for one split second, and if they do they violate the law."

the Supreme Court has stated that a guilty plea may be withdrawn, in the exercise of the discretion of the trial court, "if for any reason the granting of the privilege seems fair and just," *Kercheval v. U. S.*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), a defendant has no absolute right to withdraw his plea. *U. S. v. Giuliano*, 348 F.2d 217, 221 (2d Cir.), *cert. denied*, 382 U.S. 946, 86 S.Ct. 406, 15 L.Ed.2d 354 (1965) and *cert. denied sub nom. Prezioso v. U. S.*, 382 U.S. 939, 86 S.Ct. 390, 15 L.Ed.2d 349 (1965). On a motion to withdraw a plea, the burden is on the defendant to satisfy the trial judge that valid reasons for the grant of the privilege exist, taking into account any prejudice to the Government. *U. S. v. Michaelson*, 552 F.2d 472, 475 (2d Cir. 1977); *Giuliano, supra*, at 221.

▌ At the time Burnett made his motion to withdraw his plea herein, more than five years had passed since it was accepted by Judge Cooper. It is of no small significance that the passage of all but the first five months of this time was attributable solely to defendant's flight and willful failure to appear for sentencing as ordered. Under these circumstances, if the defendant were permitted to withdraw his plea upon the mere showing of a technical failure by the district judge under Rule 11(c)(3), the effect, almost assuredly, would be to place the Government in a position of serious disadvantage in mounting a prosecution after the passage of so long a period of time.

In *U. S. v. Journet*, 544 F.2d 633, 636 (2d Cir. 1976) this Court held that "as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in Rule 11." This Circuit has held further that the detailed requirements of Rule 11(c) govern all pleas taken after December 1, 1975. *U. S. v. Saft*, 558 F.2d 1073, 1078–79 (2d Cir. 1977).[4] Nevertheless, we now hold that, in the peculiar circumstances of this case, appellant has forfeited his right to assert that technical violations of Rule 11 of the Federal Rules of Criminal Procedure rendered his guilty plea invalid. Therefore, his motion to withdraw his guilty plea was properly denied.

In *U. S. v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979), the Supreme Court held that absent a finding that a "complete miscarriage of justice" has occurred, or that a proceeding did not comport "with the rudimentary demands of fair procedure", a guilty plea was not subject to collateral attack under 28 U.S.C. § 2255 when all that the petitioning defendant is able to allege is a failure to comply with the technical requirements of Rule 11.

We are not confronted here with a collateral attack on the validity of appellant's plea, but with a direct appeal from Judge Cooper's order. However, in *Del Vecchio v. U. S.*, 556 F.2d 106, 109 (2d Cir. 1977), this Court analyzed the considerations involved in the strict enforcement of Rule 11 when its technical violation is asserted on a direct appeal, as opposed to the review accorded to allegations of such violations when challenged by collateral attack long after acceptance of the guilty plea. We stated that when a district judge has failed to comply with Rule 11, and the defendant promptly files an appeal,

> "allowing a defendant to replead will not ordinarily directly clash with society's interest in enforcing the penal laws. Witnesses in most cases will still be available. The price of a short delay and some extra expense is a modest one to pay to correct the error of a government official (a district judge). But when a defendant takes no appeal and collaterally attacks the conviction years later . . . different considerations come into play."

These "different considerations" were discussed by the *Del Vecchio* Court, which stated that "rigid enforcement of the Rule many years after the plea has been taken erodes the principle of finality in criminal cases and may allow an obviously guilty

---

4. We note that the plea in this case, like those in *Saft* and *Michaelson*, "was taken 'before *Journet* authoritatively construed the amendments to Rule 11, and in a context where [the defendant] must have known his rights.' 552 F.2d at 477." *Saft, supra*, at 1081.

defendant to go free because it is impossible, as a practical matter, to retry him. This is not a result that commends itself to many people, including judges." 556 F.2d at 109 (citations omitted).

In this case the practical effect of invalidating appellant's plea as a result of a technical violation of Rule 11 would be to permit precisely the result which *Del Vecchio* seeks to avoid. Therefore, the considerations which underlie the previous holdings in this Circuit dictate that in a situation where a criminal defendant has fled the jurisdiction of the court and thereby caused a significant lapse of time between plea and sentencing, that defendant forfeits his right to assert mere technical violations of Rule 11 as a basis for vacating a plea of guilty.[5]

Our disposition of Burnett's contentions with regard to the technical Rule 11 violations committed below render moot his claim that the trial judge erred when he denied defendant's motion to withdraw his plea without first conducting a hearing.

For all of the foregoing reasons, the judgment of the district court is affirmed.

FRIENDLY, Circuit Judge, concurring:

I join in Judge Pierce's opinion and write simply to add that in my view we could appropriately affirm on the authority of *United States v. Michaelson*, 552 F.2d 472 (2 Cir. 1977), and *United States v. Saft*, 558 F.2d 1073 (2 Cir. 1977), see note 4, without need of relying on Burnett's flight.

---

5. This holding is also consistent with the spirit of another recent holding of this Court. In *Barker v. Jones*, 668 F.2d 154 (2d Cir. 1982), this Court held that a defendant who had been convicted in the courts of the state of New York and whose appeal within the state system was dismissed because he had escaped from custody and continued to be a fugitive two years and five months later had forfeited his right to raise by way of a habeas corpus petition pursuant to 28 U.S.C. § 2254 any issues raised in that state appeal. *Id.* at 155. The Court in that case stated that "escape, coupled with a time lapse of this duration and dismissal of the state court appeal, without voluntary return to the jurisdiction, operates to result in forfeiture or waiver under any applicable standard of habeas review." *Id.* at 156. The appellant here similarly and willfully chose to flee rather than to avail himself of legal remedies available to him within the legal process: *i.e.*, a timely motion to withdraw his plea prior to sentencing in 1976, and/or submitting to sentencing in 1976 and filing a timely appeal.