UNITED STATES of America, Appellee,

v.

Robert SWINEHART, Appellant,
No. 79–1515,

and

Appeal of Robert PERRY, No. 79–1463.

Nos. 79–1463 and 79–1515.

United States Court of Appeals,
Third Circuit.

Argued Dec. 11, 1979.

Decided Jan. 17, 1980.

Francis X. Nolan (argued), Donsky, Katz, Levin & Dashevsky, Philadelphia, Pa., for appellant Swinehart.

Thomas Colas Carroll (argued), Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for appellant Perry.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Elizabeth K. Ainslie, Gary S. Glazer, Alfred A. Gollatz (argued), Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The single question presented on this appeal is whether the Government's "sole discretion" to determine the defendants' cooperation under a plea bargaining agreement could be based exclusively on their failure of polygraph examinations. We conclude that the present record is unclear as to what extent the Government could, and did, rely on the polygraph tests and therefore vacate the judgment of the district court and remand.

### I.

On June 28, 1976, Robert Swinehart and Robert Perry were indicted on 21 counts of embezzlement and bankruptcy fraud arising from their activities as part owners of Hourly Messengers, Inc. The planned trial was preceded by a two-week suppression hearing concerning whether the Government's proposed evidence was derived from sources independent of immunized testimony. The trial court denied the motions to suppress.

Plea negotiations followed, leading to substantially identical plea agreements for each defendant. They agreed to plead guilty to certain counts of the indictment in exchange for the dismissal of other counts. In the plea agreements, the Government agreed to seek a specific sentence for each defendant in the event it obtained his cooperation as determined by the Government

in its "sole discretion." Among the obligations in the agreement, each defendant agreed to "take" a polygraph examination. If the defendants cooperated, the Government agreed that the appropriate sentence for Swinehart would be one year and six months and one year and one day for Perry. Both also would be placed on probation for five years and make restitution of $13,470. The crux of the agreements containing the various promises is:

> Defendant . . . has further offered and hereby agrees to fully cooperate with Government attorneys and investigators on all matters of interest to the Government. By the term "fully cooperate", defendant agrees that he will provide full and truthful responses to all questions asked and he will voluntarily disclose complete knowledge and information regarding all matters which are of interest to the Government. In addition, he will provide truthful testimony pursuant to a subpoena in any proceeding including Grand Jury and whatever trials the Government deems his testimony desirable.

> Under this agreement to fully cooperate with the Government, defendant agrees that he is obligating himself to provide truthful testimony and unreserved disclosure regarding any and all of the above matters of which he has knowledge and information. . . . Furthermore, defendant agrees to take any such polygraph examinations as the Government shall, from time to time, reasonably require. Any false statement made by defendant to any Grand Jury or at any court hearing or trial can and will be prosecuted under appropriate perjury statutes.

> If defendant does fully cooperate with Government attorneys and investigators on all matters of interest to the Government, the Government will state to the Court at time of sentencing that it has obtained such cooperation. The Government has the sole discretion to determine whether or not the defendant's disclosures and testimony amount to full coop-

eration, within the terms of this agreement.

Both defendants entered guilty pleas before the trial court in accordance with the agreements. Sentencing was delayed to allow Perry and Swinehart to provide the tendered cooperation. Government agents proceeded to interview each of the defendants on several occasions and they answered questions dealing with matters of governmental interest.

In accordance with the agreement, Swinehart submitted to an FBI polygraph examination. The examination, administered by Special Agent Frank Cryan, showed that Swinehart failed several questions. Swinehart thereupon decided to take a private polygraph test and consulted J. R. Pearce, a retired head of an FBI polygraph unit, who was one of Cyran's teachers. Swinehart passed the Pearce polygraph test.

Perry then took his polygraph examination with Cryan. Cryan concluded that Perry failed certain questions, all of which dealt with Swinehart's ability to pass his second polygraph examination. Perry then went to Pearce, who concluded that Perry passed some relevant questions and failed others.

▮ The Government informed Perry and Swinehart that it deemed them not to have cooperated fully under the terms of the agreement. Both Perry and Swinehart filed motions to withdraw their guilty pleas or, alternatively, for specific enforcement of the plea agreements. The defendants argued that the agreements required them to "take" polygraph examinations, not "pass" them, and that the Government relied exclusively on the examination failures in concluding that the defendants had not fully cooperated within the terms of the plea agreements.[1] Perry and Swinehart both alleged that earlier drafts of the plea agreements had required them to "pass" the polygraph examination and that they specifically negotiated to only "take" the polygraph instead of "pass" it so that the Government could not rely solely on the test.

The district court heard the defendants' allegation but did not take any evidence other than an affidavit by Perry, accepted as an offer of proof, concerning the change of the word "pass" to "take." Focusing only on the language of the plea agreements, the trial judge reasoned:

> I do not believe that the Government can be said to have abused its discretion where it relied upon the results of that polygraph in the absence of a finding of bad faith.
>
> Notwithstanding what may have been in the minds of defendants, the plea agreement is clear and unambiguous. The Government retains sole discretion—I emphasize the words "sole discretion"—to determine if there has been full cooperation. I must give those words their normal and generally understood meaning.

The court concluded that the Government had not acted in bad faith in exercising its "sole discretion" and denied the motions for withdrawal of the pleas or for specific enforcement of the agreements. Perry was sentenced to one and a half years and Swinehart three years in prison. Both defendants were also placed on probation for

1. On appeal Swinehart also argues that the district court relied on tapes between Swinehart and the attorney-part-owner of Hourly Messengers, Inc., in violation of the Sixth Amendment and attorney-client privilege. We reject this argument for several reasons. First, Swinehart never met his burden of proving an attorney-client relationship. *In re Grand Jury Empanelled February 14, 1978: Nathan Markowitz,* 603 F.2d 469 (3d Cir. 1979). Second, *Swinehart* never objected to the introduction of tapes on attorney-client grounds at the suppression hearing before trial. Third, this question was not previously raised in the district court and there was no evidence the court relied on the tapes at sentencing. Inasmuch as the material dealing with this attorney-client problem really is not implicated in this appeal, we see no reason for requiring the trial court and counsel, as the concurrence suggests, to further explore the matter.

five years and were required to make restitution in the amount of $13,470. Both Perry and Swinehart appeal, claiming that the Government could not rely exclusively on the polygraph examinations in exercising its "sole discretion."

## II.

█ The standard by which a trial court determines whether a plea may be withdrawn is "fairness and justice." *Paradiso v. United States*, 482 F.2d 409, 416 (3d Cir. 1973); *United States v. Stayton*, 408 F.2d 559, 561 (3d Cir. 1969). "The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for *any reason* the granting of the privilege seems *fair* and *just.*" *United States v. Stayton, supra*, 408 F.2d at 561, *quoting Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

█ The district court concluded that Perry and Swinehart should not be permitted to withdraw their guilty pleas because, *inter alia*, they had knowingly and voluntarily given the Government the "sole discretion" to determine whether they had cooperated. Perry and Swinehart argue on appeal that the Government improperly based its "sole discretion" exclusively on the polygraph examinations contrary to the intent of the parties, manifested in the change from the "pass" requirement to the promise to "take" the polygraph examination.[2] The district court did not make a finding whether such a change was in fact made. Assuming arguendo that it was, we

conclude that the intent of the parties in substituting the word "take" for the word "pass" is unclear on the present record. We therefore vacate the judgment of the district court and remand for further findings.

In *United States v. Crusco*, 536 F.2d 21 (3rd Cir. 1976), the defendant alleged that he understood the term "sentence," as promised in a plea bargain, to include parole time as well as the time of confinement. The Government and the district court understood "sentence" to mean only the period of incarceration. In permitting withdrawal of the plea, this court stated that "[w]here the record shows that 'circumstances as they existed at the time of the guilty plea, *judged by objective standards*, reasonably justified his mistaken impression,' a defendant must be held to have entered his plea without full knowledge of the consequences and involuntarily." *Id.* at 24.

On the present record it is unclear whether (1) a change was made in the language of the plea agreement; and (2) if there were, whether Swinehart and Perry could have reasonably believed that the Government could not rely exclusively on the failure of the polygraph examination. Under such circumstances, the district court should conduct a hearing to determine the validity of defendants' claims. The court should examine the circumstances surrounding the plea bargain and the alleged change in content, and determine the reasons why the defendants sought, and the Government agreed, to change the requirement of passing the polygraph examination.[3]

---

**2.** Perry and Swinehart also argue that reliance on the polygraph is impermissible regardless of the plea agreement, because of the inadmissibility of lie detector evidence at trial and general unreliability of polygraph results. Although the infallibility of polygraphs is arguable, we decline to hold that the Government cannot rely on the tests where the parties agree to such reliance in a plea bargain.

**3.** At oral argument, Perry's attorney asserted that it was commonly known among the defense bar that an agreement to "take" a polygraph examination does not require that one

pass. He asserted that the reason for the examination is so the Government can evaluate the truthfulness of the information in the investigative process, not to determine if the defendant is cooperative. The Government argued that it was unaware of any accepted meaning to the terms "pass" and "take." The Government said each plea agreement has its own meaning. On remand, the district court may want to inquire whether there is any customary meaning among defense attorneys and the Government regarding these terms.

The Government argues that it is not limited in the factors it could consider, as long as it acts in good faith, because the agreement vests it with "sole discretion." We find some factual similarity in *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976), where the court held that there are limits to the Government's discretion which need not be specified in the plea agreement. In *Simmons*, the plea bargain guaranteed "the defendants' full, complete and truthful cooperation" in exchange for a Government recommendation of a 15-year sentence. The Government concluded there was not full cooperation and did not recommend the 15-year terms. The court, in vacating the sentences and remanding for a hearing, stated "[t]here would be [a] manifest impropriety in permitting the government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation the government undertook in the plea bargain." *Id.* at 1261–62. The court in this case distinguished *Simmons* on the ground that the plea agreements here specifically gave the Government "sole discretion."

■ The use of the term "sole discretion" in a plea agreement ordinarily would give the prosecution a broad authority to ascertain whether the accused has cooperated. But when a defendant charges that the exercise of that discretion is improperly predicated upon a test to which the defendant has submitted, then the trial court, because it has judicially approved the bargain, has a duty to inquire whether the terms have been followed. The court, however, should not substitute its judgment for the judgment vested by the defendant in the Government under the plea agreement but, likewise, should not permit the Government to use its "sole discretion" to disregard its contractual commitments.

In determining whether the parties intended that the Government could rely exclusively on the polygraph examination, contract analogies may be helpful. *See, e. g., United States v. Roberts*, 187 U.S.App. D.C. 90, 99, 570 F.2d 999, 1008 (D.C. Cir. 1977).

> The Government will not be allowed to avoid the obligation it . . . incurred by claiming now that the language literally promises nothing to the defendant. A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language.

*United States v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978). The trial court must consider the plea bargain in light of the important constitutional rights being waived by the defendant. *Jones v. Estelle*, 584 F.2d 687 (5th Cir. 1978).

■ Because of the unique nature of a plea bargain, involving as it does the waiver of constitutional rights, we believe the parol evidence rule should not be rigidly applied to bar evidence which would aid the trial court in properly construing the plea agreement. Thus, evidence of a prior draft plea agreement, or of statements made by the prosecution during the plea bargaining which sheds light on the meaning of a pertinent word or phrase in an "integrated" plea agreement would be admissible.

The Government also argues that it did not rely exclusively on the polygraph failures in determining that Perry and Swinehart had not cooperated. The district court did not confront this issue since it believed the Government had the right to rely exclusively on the polygraph tests. On remand, if the district court finds that the Government could not rely solely on the tests, it should consider whether the Government reached its decision on other relevant factors.

An examination of the evidence by the district court should reveal the intent of the parties. A hearing is especially appropriate in this case because the defendants' allegations pertain to purported occurrences outside the presence of the trial court. *Machibroda v. United States*, 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *United States v. Marzgliano*, 588 F.2d 395, 399 (3rd

Cir. 1978). The court is in the best position to ascertain the facts, assess the intent of the parties under the plea agreement and, if it was breached, to exercise its discretion and fashion an appropriate remedy. *United States v. Bowler, supra,* 585 F.2d at 856.

### III.

It is indeed unfortunate that after a carefully considered plea bargain designed to avoid an evidentiary hearing concerning guilt, we are now required to remand for an evidentiary hearing as to the terms and meaning of the plea bargain agreement. However, important constitutional rights of the defendants are at stake and, in the interest of fairness and justice, the necessary inquiry must be made. The judgment of the district court will be vacated and the case remanded for further proceedings not inconsistent with this opinion.

SLOVITER, Circuit Judge, concurring and dissenting.

I concur in all parts of the majority opinion except footnote 1 dealing with the second issue raised by appellant Swinehart. He claims that the Government surreptitiously recorded conversations between him and his attorney, that those conversations were used to induce the trial court to double the previously agreed upon sentence; and that the actions of the Government in this respect constituted such an egregious intrusion into the confidential relationship between him and his attorney that he is entitled to dismissal of all charges against him. The Government admits that Kafrissen, a shareholder of Hourly Messengers, Inc. who also served as its attorney, agreed to and did record conversations which he had with Swinehart, that transcripts of some of these conversations were marked as exhibits for use at trial, and that at the hearings on appellants' motions to withdraw their guilty pleas they were used for the purpose of showing inconsistencies between the facts as they were told to Kafrissen and as they were given to the Government polygrapher. The Government argues that Swinehart failed to prove an attorney-client relationship between him and Kafrissen, and that he waived any objection to the use of these taped conversations because he failed to invoke the claim of attorney-client privilege or violation of his rights under the Sixth Amendment at the time the transcripts were originally marked as exhibits. It admits that Swinehart did claim attorney-client privilege in objecting to the introduction of the transcripts at the hearings on appellants' motions to withdraw their guilty pleas. Swinehart argues that there was no need to object to the marking of the transcripts for the trial proceeding because the Assistant U.S. Attorney had represented that the transcripts would not be used as part of the Government's evidence in chief, and Swinehart attaches to his reply brief on appeal an affidavit to that effect by his trial counsel.

The record on these issues is not complete. It is not clear whether the relationship between Swinehart and Kafrissen was that of client and attorney, or whether, even if not, the statements of Swinehart were made under circumstances which would entitle him to a reasonable expectation that they were protected communications. The facts on possible waiver of his rights by Swinehart have not been developed. Since all members of the panel agree that this case should be remanded for hearing on the issue of the plea agreement, I would also remand for determination of the nature of the relationship between Swinehart and Kafrissen. The burden is on Swinehart to prove the existence of an attorney-client relationship. *In re Grand Jury Empanelled February 14, 1978: Markowitz,* 603 F.2d 469, 474 (3d Cir. 1979). The relationship may have been that of two business colleagues concerned about possible investigation. *See, e. g. United States v. Stern,* 511 F.2d 1364 (2d Cir.), *cert. denied,* 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975). On the other hand, if the relationship between Swinehart and Kafrissen was a confidential one, then the court would

have to determine whether its invasion by the Government was intentional or prejudicial, see *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), whether Swinehart preserved his rights, and if so, the appropriate sanction to be applied. See *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967) (per curiam); *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966) (per curiam). These issues should be considered in the first instance by the trial court.

The allegations by Swinehart charge purposeful governmental intrusion into the privacy of the attorney-client communications. They may prove to be without foundation in fact. However, if proven, they would represent serious Government misconduct meriting effective judicial response. At a minimum, appellant Swinehart is entitled to a hearing at which there can be full-scale development of the facts. *O'Brien v. United States*, 386 U.S. at 346, 87 S.Ct. 1158 (Harlan, J., dissenting); *Black v. United States*, 385 U.S. at 31, 87 S.Ct. 190 (Harlan, J., dissenting).