STATE of Wisconsin, Plaintiff-Respondent,

v.

Alan Wayne RIVEST, Defendant-Appellant.

Supreme Court

*No. 80–1365–CR. Argued December 3, 1981.—*
*Decided March 2, 1982.*

(Also reported in 316 N.W.2d 395.)

For the defendant-appellant there were briefs by *Thomas P. Tofte* and *Schwartz, Weber & Tofte,* attorneys, and *Martin I. Hanson* and *Hanson & Gasiorkiewicz,* of counsel, and oral argument by *Martin I. Hanson,* all of Racine.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

COFFEY, J.   This case is before this court on certification from the court of appeals to review an order of the Circuit Court for Racine County, HON. RICHARD G. HARVEY, JR., presiding.  The defendant-appellant, Alan Rivest, appeals from an order granting the state's motion to vacate a plea agreement entered on February 6, 1979.

On the afternoon of June 5, 1978, Floyd Jensen was murdered and robbed in his gasoline service station in Caledonia, Wisconsin.  Shortly after the murder-robbery,

Alan Rivest surrendered to police. Rivest, in a statement given to the police, admitted participating in the robbery of the gas station owner, but denied any involvement in his subsequent murder. Rivest indicated in his statement that Edward Rodriguez, his accomplice, repeatedly stabbed Jensen during the robbery and that he did not participate therein and that he fled the gas station before Rodriguez but after the stabbing.

Later that same evening on June 5, 1978, Rivest signed a sworn statement dictated to the police in which he repeated his earlier statement and denied any involvement in the stabbing of Floyd Jensen.

Rivest, a minor, was initially charged with delinquency for the murder and armed robbery of Floyd Jensen in the juvenile court and was subsequently waived into adult court on August 1, 1978. After his waiver into adult court, Rivest was not charged with being a party to first-degree murder. Thomas Finley, the assistant district attorney handling the case, agreed with Rivest and his attorney that the state would withhold the murder charge pending the completion of a final plea agreement. Based upon Rivest's prior statements and his investigation, Assistant District Attorney Finley charged Rivest only with the crime of armed robbery on August 3, 1978.

On September 25, 1978, Rivest took a private polygraph examination which indicated that he was truthful in his denial of any participation in the stabbing of Floyd Jensen. The results of the polygraph examination were presented to the assistant district attorney. Subsequent negotiations between Rivest, his attorney and the Assistant District Attorney Finley produced a plea agreement. In the plea agreement, Rivest agreed to (1) plead guilty to a charge of robbery; (2) testify against Rodriguez whenever requested; and (3) pass a second polygraph examination conducted by a party chosen by the district

attorney. On January 24, 1979, Rivest took the second polygraph examination conducted by the police and the test indicated that Rivest was unaware that an assault was to be perpetrated on Jensen, and did not participate in stabbing Jensen.

At a hearing on February 6, 1979, the plea agreement entered into between Rivest and the assistant district attorney was placed on the record and Rivest pled guilty to the crime of robbery, reduced from armed robbery, and was convicted on that plea. Rivest was sentenced to six years in prison and is presently serving that sentence.

On February 19, 1979, Rivest testified at the preliminary hearing of Edward Rodriguez. At the hearing, Rivest testified that he never got near Jensen nor did he come in physical contact with him. He also testified that he ran "straight out across the street" shortly after Rodriguez stabbed Jensen.

Subsequent to Rivest's testimony at the preliminary hearing, the district attorney, Dennis Barry, while preparing the Rodriguez murder file, reviewed evidence which he believed directly contradicted both Rivest's initial statements to the police and his testimony at the preliminary hearing. This evidence established that there was a three to five minute delay between the time Jensen's body was discovered and the time that witnesses saw Rivest and Rodriguez flee the scene together. The evidence also proved that a "herringbone pattern" on the forehead of the victim matched the "herringbone pattern" on Rivest's shoes, but not Rodriguez' shoes. Finally, a State Crime Lab report indicated that the large bloodstains present on Rivest's pants and undershorts matched the blood type and factors of Floyd Jensen.

Based upon this evidence, District Attorney Barry interviewed Rivest and confronted him with this evidence. At that interview, Rivest admitted leaving the gas station by a different door than the one he had

originally testified he exited from. However, Rivest offered no explanations for the presence of his shoe print on the deceased's head nor the presence of the deceased's blood on his clothing and he continued to reiterate his former account of the stabbing.

District Attorney Barry concluded after the interview that Rivest's account of the circumstances surrounding the stabbing were untrue, and that his prior and continued statements and testimony were false and thus, he breached the plea agreement. Based upon this evidence, District Attorney Barry decided not to present Rivest's testimony at the Rodriguez trial.

Thereafter, on August 21, 1979, the state filed first-degree murder charges against Rivest. The same day, the defendant secured a writ of habeas corpus from Circuit Judge John C. Ahlgrimm to bar prosecution of the first-degree murder charge. After holding extensive hearings on the matter, Judge Ahlgrimm ruled that before the murder charge could be prosecuted, the state would have to secure an order vacating the plea agreement from the judge who originally approved the plea agreement.

The state then filed a motion before Judge Harvey to vacate and set aside the plea agreement and guilty plea. After hearings and arguments, Judge Harvey entered an order setting aside the plea agreement and guilty plea and authorized the state to continue the prosecution of the murder complaint. The court held that Rivest had fraudulently induced the state to enter into the plea agreement through his false and misleading statements and had materially breached the agreement by giving false testimony at Rodriguez' preliminary hearing.

The court of appeals granted a permissive appeal from this order, pursuant to sec. 809.50, Stats., and petitioned this court for certification.

*Issues*

1. Did Rivest materially breach the plea agreement entered on February 5, 1979, by giving false testimony at Rodriguez' preliminary hearing?

2. Did Rivest fraudulently induce the state to enter into the plea agreement?

*Breach of Plea Agreement*

This case raises issues concerning both the standard for setting aside a plea agreement and the procedure to be employed where the state seeks to vacate a plea agreement after a defendant has commenced serving the sentence imposed. These are questions of first impression in Wisconsin, although decisions of several other jurisdictions have established procedures and standards for vacating plea agreements previously approved by a court.

The Supreme Court of Nevada in the decision of *Gamble v. State*, 604 P.2d 335 (Nev. 1979), summarized the procedure applicable when the state seeks to be released from its obligations under a plea bargain:

". . . [W]hen the prosecution contends that it should be released from its obligations under a plea bargain because of an alleged breach of the agreement by the defendant, an evidentiary hearing is required to determine whether the defendant actually breached the agreement, and, if so, whether the breach is sufficiently material to warrant releasing the prosecution from its promises. *United States v. Donahey*, 529 F.2d 831 (5th Cir. 1976); *see also United States v. Nathan*, 476 F.2d 456 (2d Cir. 1973)." *Id.* at 337.

The rationale underlying this requirement of an evidentiary hearing concerning the alleged breach of a plea agreement has been summarized in the following manner:

"On the merits, our view is that in a plea bargain the government's obligation to make a recommendation

arises only if defendant performs his obligation (in this instance, *full disclosure*), but the question whether defendant did in fact fail to perform the condition precedent is an issue not to be finally determined unilaterally by the government, but only on the basis of adequate evidence by the Court which, in accordance with *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed 2d 427 (1971), judicially approved the bargain as meeting governing standards. There would be manifest impropriety in permitting the government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation the government undertook in the plea bargain." *United States v. Simmons*, 537 F.2d 1260 (4th Cir. 1976). (Emphasis supplied.)

In the case at bar, several days of hearings were held to establish both the terms of the plea agreement entered into by Alan Rivest and the breach of that agreement before Judge Ahlgrimm in the habeas corpus action. By stipulation of the parties, the transcript of these proceedings and the evidence presented therein were used as the basis for Judge Harvey's decision of the state's motion to vacate the plea agreement.[1] Based upon this testimony and evidence, Judge Harvey, who had initially approved the plea agreement, held that the evidence established beyond a reasonable doubt that Rivest had fraudulently induced the plea agreement and had breached its terms. Thus, we hold that the extensive proceedings before Judge Harvey satisfied the procedural requirement of an evidentiary hearing establishing the grounds for vacating a plea agreement.

We next address the question of the appropriate standard to be applied in determining whether a plea agree-

---

[1] Because the transcript of the prior hearing was used on stipulation of both parties, we hold that neither can complain that the hearings held before Judge Harvey do not satisfy the requirement of an evidentiary hearing.

ment has been breached by a defendant. Other courts which have addressed this question have relied on contract law analogies in determining questions of the validity of a plea agreement:

"Courts have frequently looked to contract law analogies in determining the rights of defendants aggrieved in the plea negotiation process. *See Cooper v. United States*, 594 F.2d 12, 15–16 (4th Cir. 1979); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal. L. Rev. 471, 530 (1978). It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement. *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976); *United States v. Resnick*, 483 F.2d 354, 358 (5th Cir.), *cert. denied*, 414 U.S. 1008, 94 S. Ct. 370, 38 L. Ed. 2d 246 (1973); *United States v. Nathan*, 476 F.2d 456, 459 (2d Cir.), *cert. denied*, 414 U.S. 823, 94 S. Ct. 171, 38 L. Ed. 2d 56 (1973)." *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981).

While analogies to contract law are important to the determination of questions regarding the effects of a plea bargain, such analogies are not solely determinative of the question as fundamental due process rights are implicated by the plea agreement.

"The analogy to contract law doctrines is not determinative in the area of plea negotiation, however. Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by adequate 'safeguards to insure the defendant what is reasonable [in] the circumstances.' *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 498, 30 L. Ed. 2d 427 (1971); *see Cooper v. United States*, 594 F.2d 12, 15–20 (4th Cir. 1979)." *Id.* at 1390.

This is consistent with this court's prior recognition that cases concerning the enforcement of plea agreements require the application of the doctrine of due process.

"While none of the cases enforcing the district attorney's agreement approach the issue in terms of due process of law, we consider the facts constituting good public policy require the application of the doctrine of due process, which rests upon 'that whole community sense of "decency and fairness" that has been woven by common experience into the fabric of acceptable conduct.' *Breithaupt v. Abram* (1957), 352 U.S. 432, 436, 77 Sup. Ct. 408, 1 L. Ed 2d 448." *Austin v. State,* 49 Wis. 2d 727, 736, 183 N.W. 2d 56 (1971).

By analogy to contract law, we conclude that a plea agreement may be vacated where a material and substantial breach of the plea agreement has been proved. To allow a defendant to claim the benefit of an agreement where he, himself, is in default, offends fundamental concepts of honesty, fair play and justice.

We further hold that the constitutional due process requirements of "decency and fairness" are satisfied where the burden is placed upon the party seeking to vacate the agreement to establish both the breach, and that the breach is sufficiently material to warrant releasing the party from its promises (prosecution or defense) before the same judge who accepted the plea, whenever possible.

Our holding that a prosecutor is relieved from the terms of a plea agreement where it is judicially determined that the defendant has materially breached the conditions of the agreement is consistent with numerous decisions in other jurisdictions holding that a party is not bound to a plea agreement where the other party is in substantial default of a material issue. *See: United States v. Calabrese,* 645 F.2d 1379 (10th Cir. 1981); *United States v. Nathan,* 476 F.2d 456 (2d Cir. 1973); *United States v. Simmons,* 537 F.2d 1260 (4th Cir. 1976); *United States v. Donahey,* 529 F.2d 831 (5th Cir.

1976); *Adamson v. Superior Court of Arizona,* 125 Ariz. 579, 611 P.2d 932 (Ariz. 1980); *Gamble v. State,* 604 P.2d 335 (Nev. 1979); *People v. Clark,* 72 Mich. App. 752, 250 N.W.2d 774 (Mich. Ct. App. 1977).

The trial court, in its decision on the motion to set aside the plea bargain, found that Alan Rivest testified falsely that he had no physical contact with Floyd Jensen as demonstrated in the following excerpt from Rivest's testimony at the preliminary hearing:

"*Q.* Did you ever get near Mr. Jensen? *A.* No.
"...
"*Q.* So I guess you don't know if there was blood found on your underwear or not? *A.* No.
"*Q.* So you don't know if there was any how [sic] it would have gotten there? *A.* Right.
"...
"*Q.* Did you at any time have any physical contact with Mr. Jensen on that date? *A.* No, sir."

The judge in his ruling setting aside the plea agreement and guilty plea referred to the medical testimony establishing the presence of blood of a type matching that of Jensen on Rivest's clothing and Rivest's shoe print on Jensen's head in support of these conclusions. The court further found that Rivest had testified falsely concerning both the time and manner in which he fled the gas station. Rivest did not explain the apparent falsity of his statement concerning his exit, physical contact with Jensen and bloodstains on his clothing when interrogated by District Attorney Barry nor has he offered an explanation to date. Finally, the court in its supplemental findings expressly held that one of the conditions of the plea agreement was that Rivest would give *truthful* testimony at the preliminary hearings and all other proceedings. These were findings of fact made by the trial court and as such they must be upheld by an appellate court unless they are clearly erroneous and against the great weight

and clear preponderance of the evidence. *Aetna Life Ins. Co. v. Mitchell,* 101 Wis. 2d 90, 110, 303 N.W.2d 639 (1981).

The conclusion that the trial court's findings are not erroneous nor against the great weight of the evidence is established by the clear, convincing and unrebutted scientific testimony and physical evidence of Jensen's blood on Rivest's clothing, Rivest's shoe print on Jensen's head and the testimony concerning Rivest's delayed departure from the gas station. The testimony of both Rivest's attorney and the prosecutor at the habeas corpus proceeding demonstrates that it was implicit in the plea agreement that Rivest's testimony was to be truthful and thus we agree that the trial court's finding on that issue is supported by the evidence.

The evidence at the hearings in the habeas corpus action established that Rivest in all probability played a significantly greater role in the murder of Floyd Jensen than he owned up to or testified to and that evidence compels us to hold that Rivest's perjured testimony materially breached the plea agreement. Rivest's attempts to completely exculpate himself from involvement in the stabbing death of Floyd Jensen, through false testimony, deprived the state of a material and credible witness for use in the prosecution of Rodriguez and, therefore, prevented the state from receiving the benefit it sought when consenting to the plea agreement. Thus, we hold that the trial court was correct in vacating the plea agreement and guilty plea based upon Rivest's material breach.

Rivest argues that his inconsistent testimony was not a sufficient breach of the plea agreement to justify the vacation of the agreement. We disagree with this contention. It is ludicrous for the defendant to argue that his perjurous testimony was anything less than a grave and material breach of the plea agreement. It is funda-

mental to the American system of jurisprudence that a witness testify truthfully. Without truthful testimony, it is nigh onto impossible to achieve the primary goal of our judicial system, justice. It is because the search for the truth is central to our legal proceedings that we require each witness to take an oath of truthfulness prior to testifying. Thus, to say that the giving of false testimony of a material fact is not a material breach of a promise to testify truthfully is to undermine and corrupt the very basic premise upon which our judicial system was founded and operates to date.

The legislature has sought to reinforce the importance of truthful testimony by making the breach of the witness' oath of truthfulness as to a material fact a felony. Similarly, the ethical rules governing all attorneys forbid the knowing acquiescence in false testimony and in this case required that neither the prosecutor nor defense counsel present Rivest's false testimony which was so false and unbelievable as to be useless in prosecuting Rodriguez. The falsity of Rivest's testimony, if knowingly used at trial, would have rendered the conduct of the attorney presenting the testimony unethical and illegal.

We note that other courts have found similar instances of incredible testimony sufficient to void plea agreements. In *United States v. Eucker*, 532 F.2d 249 (2d Cir. 1976), the court held that the prosecutor was not bound by a plea agreement where the defendant gave completely exculpatory testimony after agreeing to cooperate in the prosecution of a co-defendant.

"The Assistant United States Attorney who represented the Government on the trial promised Sloan that if he pleaded guilty and cooperated in the preparation and presentation of the case against Anderson, the Government would 'go to bat' for him. Thereafter, Sloan pleaded guilty. However, his cooperation consisted of presenting the prosecution with a version of the facts in

which he attempted to completely exculpate himself from any wrongdoing. Under these circumstances the Government was unwilling to vouch for his credibility and did not call him as a witness. The prosecutor also did not 'go to bat' for him, because he did not consider Sloan's willingness to testify falsely to be cooperation." *Id.* at 256.

Similarly, in the case at bar, Rivest, through his testimony at the preliminary hearing, sought again to completely exculpate himself from any involvement in the stabbing of Jensen in spite of the scientific and physical evidence possessed by the prosecution which directly conflicted with Rivest's testimony. As in the case of *United States v. Eucker, supra,* and the case at bar, it was proper for District Attorney Barry not to use Rivest's testimony in the trial of his accomplice, and to consider the plea agreement breached.

In *United States v. Donahey, supra,* the court relieved the prosecution of the terms of a plea agreement where the defendant gave "evasive and misleading answers," and answers "which could not be verified after agreeing to fully co-operate in the prosecution of co-defendants." *Id.* at 832. Likewise, Rivest's testimony at Rodriguez' preliminary examination was evasive and misleading and to date has not been explained by Rivest.

Rivest finally argues that an alleged delay in seeking a vacation of the plea agreement in the present case violated his constitutional right to due process and requires the reinstatement of the plea agreement. Where a defendant seeks to avoid prosecution based upon prosecutorial delay, it is clear that it must be shown that the defendant has suffered actual prejudice arising from the delay and that the delay arose from an improper motive or purpose such as to gain a tactical advantage over the accused.

"In *Lovasco,* 431 U.S. at 789, the United States Supreme Court stated that the due process clause 'has a limited role to play in protecting against oppressive delay.' However, it rejected the defendant's argument that due process precludes prosecution whenever a defendant suffers actual prejudice arising out of preindictment delay. The court explained that actual prejudice may make a due process claim 'concrete and ripe for adjudication,' and is a necessary element of such a claim. 431 U.S. at 789–790. Nonetheless, it continued, a defendant must also prove that the government's delay in charging arose from an improper motive or purpose such as to gain an unfair ' "tactical advantage over the accused." ' (Quoting *United States v. Marion,* 404 U.S. 307, 324 (1971).) 431 U.S. at 795." *State v. Davis,* 95 Wis. 2d 55, 58, 288 N.W. 2d 870 (Ct. App. 1980).

Referring to the question of prosecutorial delay, we hold that the tests of "actual prejudice" and "improper motive" as set forth in *State v. Davis, supra,* are applicable to the case at bar.

Rivest was charged with first-degree murder shortly after the beginning of the Rodriguez trial when it became apparent that he had no interest in changing his prior testimony in order to fulfill the plea bargain by truthfully testifying against Rodriguez. This charge was brought only three months after Rivest was confronted by the district attorney with his false testimony and offered an opportunity to explain his earlier account of the stabbing, which he has not done to date. At the time that the murder charge was issued, Rivest was advised and put on notice that the state no longer believed it was bound by the plea agreement. Any subsequent delay is attributable to both the fact that the defendant challenged the issuance of the first-degree murder complaint and the fact that there was no Wisconsin law clearly outlining the proper procedure to be employed when the state seeks to be relieved of the obligation of a plea

agreement. The alleged delay, therefore, was attributable to procedures, including this appeal, instigated to protect Rivest's due process rights under the plea agreement. Thus, based upon these facts, we hold that there was no unreasonable delay in the state's attempt to avoid the plea agreement, nor does the record demonstrate that the delay was due to any improper motive on the part of the district attorney.

Because we hold that the plea agreement and guilty plea were properly vacated due to the breach of that agreement by the defendant, Alan Rivest, it is not necessary to address the question of whether Rivest fraudulently induced the state to enter into the agreement.

Likewise, we do not deal with the question of the time Rivest has spent in incarceration under the sentence imposed on his earlier guilty plea because the fact that Rivest was committed to incarceration is of no consequence in determining whether the plea bargain or guilty plea should be set aside.

*By the Court.*—The order of the trial court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. I agree with the majority that "the plea agreement is ultimately a constitutional contract." Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Calif. L. Rev. 471, 473 (1978). While law guides the court's initial analysis of the formation dissolution of plea agreements, there are overriding principles which limit the usefulness of contract law anaysis.

One such principle is the due process rights of the defendant which are implicated in the repudiation of a plea agreement. The state's refusal to honor a plea agreement after a guilty plea has been entered may undermine the voluntariness of the plea or may result in fundamental unfairness to the defendant. *Santobello v. New York,*

404 U.S. 257 (1971); *Austin v. State,* 49 Wis. 2d 727, 734–736, 183 N.W.2d 56 (1971).[1]

A second principle is the public's interest in the sound and effective administration of the criminal justice system. The public has an interest in seeing that the criminal statutes are enforced; that rights guaranteed by the state and federal constitutions are granted; that there is certainty and finality in guilty pleas; and that prosecutors are held accountable in the performance of their duties.

To vacate the plea agreement in the case at bar, the majority requires the state to prove beyond a reasonable doubt (1) that the defendant committed perjury and (2) that the act of perjury was a substantial and material breach of the plea agreement.[2] Accepting this statement of the applicable law, I dissent because I conclude that the evidence in the case at bar is insufficient to support the circuit court's finding beyond a reasonable doubt that the defendant committed perjury and because I conclude

---

[1] The court must consider vacating the plea bargain in light of the significant consequences of a guilty plea and the important constitutional rights being waived by the defendant. The defendant in the case at bar, in reliance on the plea agreement, pleaded guilty to a robbery charge thereby waiving his right to both a jury trial and confrontation of the witnesses against him. The defendant also waived his right of self-incrimination and testified at Rodriguez's preliminary hearing consistently with his previous statements. Since March 2, 1979, the defendant has been in a state prison serving his six-year sentence. *United States v. Swinehart,* 614 F.2d 853, 858 (3d Cir. 1980); *United States v. Bowler,* 585 F.2d 851, 853 (7th Cir. 1978).

[2] The state asserts two grounds for the vacation of the plea agreement: It was fraudulently induced. It was breached. The majority concludes that the plea agreement should be vacated on the grounds of breach and does not reach the inducement issue. I also limit my discussion to the issue of breach. Using similar reasoning, however, I would conclude that fraud was not proved and that the facts do not justify the court's vacating the plea agreement on the grounds that that agreement was fraudulently induced.

that the facts and circumstances in the case at bar do not justify vacating the plea agreement.

While the circuit court did not enter findings of fact or conclusions of law, the findings can be gleaned from the circuit court's decision. The circuit court found that a plea agreement had been consummated between defense counsel on behalf of the defendant and an assistant district attorney on behalf of the state, the terms of which are set forth in the record as follows: The defendant agreed to take a second lie detector test. If the test result showed the defendant was being truthful in denying direct participation in the actual stabbing of the victim and in denying any prior knowledge that Rodriguez intended to harm the victim, the state would charge the defendant with robbery and would forbear charging the defendant as a party to the murder. The defendant agreed to plead guilty to the robbery charge and the state was free to recommend any sentence it deemed appropriate. Furthermore, the defendant agreed to testify truthfully in the state's prosecution of Rodriguez whenever requested to do so by the state.[3]

## I.

The district attorney contends that the defendant breached the last term of the plea agreement, *i.e.* to testify truthfully, by lying at the Rodriguez preliminary hearing and thus making it impossible for the state to call him as a witness at the Rodriguez trial. If the state called the defendant as a witness at trial, asserts the district attorney, it "would be suborning perjury," it would be a "violation of the Code of Professional Re-

---

[3] For a discussion of the use of this type of condition, *see* 1 A.B.A., *Standards for Criminal Justice, Pleas of Guilty*, secs. 1.4 and 1.8(a)(iv) (2d ed. 1980); Newman, *Conviction: The Determination of Guilt or Innocence Without Trial*, 186–187 (1966).

sponsibilities to use a witness who you think would be perjurable [sic]."

In vacating the agreement the circuit court concluded, beyond a reasonable doubt, that the defendant "lied under oath at the Rodriguez preliminary hearing" and that the defendant "breached by perjury." Supplemental Finding No. 1 dated July 29, 1980.

On review the majority applies the rule that the findings of fact made by the circuit court will be upheld unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. *Supra* pp. 415, 416.[4] Applying the great-weight-and-clear-preponderance test to the circuit court's findings in this case requires the findings of perjury be supported by evidence sufficient to meet the "beyond a reasonable doubt" burden of proof. *Madison v. Geier*, 27 Wis. 2d 687, 690, 135 N.W.2d 761 (1965). In other words, the test applied upon appeal to this court is whether the evidence adduced, believed and rationally considered by the circuit court was sufficient to prove the defendant's guilt beyond a reasonable doubt. *Cf. Gauthier v. State*, 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965).

The majority holds the evidence in the case at bar sufficient to justify the circuit court's finding beyond a

---

[4] For purposes of analysis, I use the standard set forth by the majority for review of the circuit court's findings. Nevertheless I believe the usual standard for review of circuit court findings is not applicable in this case where the evidence is documentary. The circuit court made its findings of fact on the basis of a transcript of a proceeding held before another court; it did not see or hear the witnesses. Under such circumstances this court is as capable of analyzing the record and making findings of fact as is the circuit court. *Delap v. Institute of America, Inc.*, 31 Wis. 2d 507, 510, 143 N.W.2d 476 (1966); *Vogt, Inc. v. Int'l Brotherhood*, 270 Wis. 315, 321i, 71 N.W.2d 359, 74 N.W.2d 749 (1955, rehearing 1956). I would not defer to the circuit court's findings of facts. This court should review the record and make its own findings of fact.

reasonable doubt that the defendant's testimony was "perjurous testimony," constituting a breach of the plea agreement. *Supra* p. 416. I view the evidence as insufficient to prove beyond a reasonable doubt that the defendant committed perjury.

Not all false statements under oath constitute perjury. Sec. 946.31, Stats. 1979–80;[5] *State v. Evans,* 229 Wis. 405, 282 N.W. 555 (1938). A person who testifies falsely but in good faith with the honest belief that he is telling the truth is not guilty of perjury. The defendant agreed to testify as to what he believes to be the truth. That there is evidence which is inconsistent with the defendant's testimony and which indicates that the defendant's testimony is objectively false does not necessarily prove that the defendant committed perjury. Perjury requires proof of scienter. The defendant's lack of belief as to truth of his statements must be discerned by the trier of fact from the totality of the evidence before it.

The defendant's testimony under oath which the circuit court concluded was perjurous was substantially the same as the story he gave to the police immediately after the incident.

At the Rodriguez preliminary hearing the defendant stated that he and Rodriguez went to a service station to steal money and that Rodriguez began stabbing the victim. He further testified that he neither got near nor had any physical contact with the victim. The defendant said that after Rodriguez stopped stabbing the victim, he

---

[5] Sec. 946.31(1), Stats. 1979–80, defines the elements of the crime of perjury as follows:

"Whoever under oath or affirmation orally makes a false material statement which the person does not believe to be true, in any matter, cause, action or proceeding, before any of the following . . . is guilty of a Class D felony:

"(a) A court;

"(b) A magistrate;

"(c) A judge . . . ;"

(the defendant) fled the station ahead of Rodriguez. He testified he knew Rodriguez was fleeing the station after him when he heard the sound of the brakes of a car which nearly hit Rodriguez who was crossing a road the defendant had just crossed.[6]

After Rodriguez's preliminary hearing, the newly elected district attorney, who was prosecuting the Rodriguez case, concluded that the following evidence (which was to a large extent available to the district attorney's office at the time of the plea agreement)[7] conflicts with the defendant's testimony and proves that the defendant committed perjury:

---

[6] The defendant testified as follows:

"*Q* Did Eddie say anything as he was stabbing Mr. Jensen? *A* He said—he said a couple of times die, die.

"*Q* Did you say anything at that point? *A* I asked—I talked to him, tried to tell him to stop, but then he told me not to say nothing, and he was gonna do it to me, so I just started running.

"*Q* Did Eddie say something to you? *A* Yeah.

"*Q* What did he say to you? *A* He said that if I—I better not say nothing about it otherwise he was gonna do it to me.

"*Q* All right. Then what happened? *A* That's when I started running.

"*Q* And where did you run at that time? *A* Straight out across the street into the field.

"*Q* Did you see Eddie Rodriguez leave Jensen's gas station? *A* I didn't actually see him leave; I seen him when he got to the road, though.

". . .

"*Q* Did you ever get near Mr. Jensen? *A* No.

". . .

"*Q* Did you at any time have any physical contact with Mr. Jensen on that date? *A* No, sir."

[7] All the physical evidence, the names of the eyewitnesses and some statements of the eyewitnesses were in the district attorney's or investigators' files when the plea agreement was reached. I conclude the district attorney's office should be held to know the evidence which is in its files or which is readily available to it in the investigators' files. *Cf. Wold v. State,* 57 Wis. 2d 344, 349–350, 204 N.W.2d 482 (1973).

(1) Two witnesses stated that they observed the defendant and Rodriguez flee the station through the garage doors and that the two were close enough to touch each other as they fled. This testimony appears to contradict defendant's testimony that he fled through the service door ahead of Rodriguez shortly after the stabbing.

(2) The autopsy report on the victim indicated that he had a "herring-bone pattern" bruise on his forehead which matched the pattern on the sole of the defendant's shoes, not Rodriguez's shoes. A Crime Laboratory report stated that defendant's pants and undershorts had blood stains which were consistent with the victim's blood type and "factors." The two reports appear to contradict defendant's testimony that he neither got near nor had any physical contact with the victim.

Neither the eyewitness testimony nor the physical evidence establishes perjury beyond a reasonable doubt.

On close analysis the eyewitnesses' description of the defendant and Rodriguez leaving the building are not significantly different from the defendant's. The defendant's own testimony shows that he did not leave the building very much sooner than Rodriguez. There is no description of the relative position of the garage door and the service door; I cannot evaluate the importance of this discrepancy. The majority assumes that the eyewitnesses' testimony is totally correct, that the defendant's version is totally incorrect, and that the defendant must have knowingly lied. Neither the circuit court nor this court heard or saw the witnesses. Neither court can judge the credibility of the witnesses. Eyewitnesses and the defendant can be honestly mistaken in observation and recollection.[8]

---

[8] The vagaries of eyewitness testimony are well documented. *United States v. Wade,* 388 U.S. 218, 228 (1967); *United States v. Hodges,* 515 F.2d 650, 653 (7th Cir. 1975); *United States v. Tel-*

The physical evidence does not exclude to a moral certainty every reasonable hypothesis that the defendant's testimony is truthful.

The blood stains on defendant's clothing could have been caused by the spurting of the victim's blood. The doctor who performed the autopsy stated that there could be a lot of blood from 28 stab wounds and that it would be difficult to predict its dispersion. A witness testified there was a lot of blood in the area where the victim was lying.

The defendant's shoe print on the victim does not prove beyond a reasonable doubt that the defendant perjured himself with a negative answer when asked whether he had any "physical contact" with the victim. The doctor testified that the print could have been caused by kicking or stepping. Given the focus of both the plea agreement and the questioning of the defendant at the preliminary hearing, namely whether or not the defendant was actually involved in the stabbing or knew beforehand that Rodriguez intended to harm the victim, the defendant could well have understood the question about physical contact to refer to the time of the stabbing, not to when he was exiting the scene. There is no perjury if the defendant misunderstood the question. In view of the defendant's emotional state,[9] the defendant could have stepped on the victim's head when he fled the scene without being aware of what he did. The defendant's diagram of the scene of the crime places the body of the victim in such a position that the defendant would have to run past the body to exit the scene as he asserts he did.

_faire_, 469 F.2d 552, 558 (D.C. Cir. 1972); _Hampton v. State_, 92 Wis. 2d 450, 465, 285 N.W.2d 868 (Abrahamson, J. concurring).

[9] The defendant, a seventeen-year old, had witnessed a brutal stabbing and had been warned by Rodriguez to shut up or he'd be next. The defendant ran out of the station and then fled from the area. He voluntarily flagged down a police car and gave the police a statement about the crime. The police described the defendant as emotional and crying.

It is important to remember that the state did not enter into a plea agreement with the defendant whereby the defendant agreed to be an "unimpeachable witness." The defendant agreed only to be a truthful witness, to tell what happened to the best of his recollection. On the basis of this documentary record the state may have proved that the defendant is not worthy of belief, but the state has not shown with the requisite clarity that the defendant committed perjury.[10]

## II.

Assuming arguendo that the defendant breached his obligation under the plea agreement to testify truthfully, I conclude that under the peculiar combination of facts and circumstances in this case the circuit court should not grant the state's motion to vacate the plea agreement.

As the majority acknowledges, *supra,* p. 414, not all breaches by the defendant justify releasing the state from the plea agreement.[11] Under contract law, some

[10] The majority opinion appears to concede that perjury was not proved beyond a reasonable doubt. The majority opinion states, *supra* p. 416, "the evidence at the hearings in the habeas corpus action established that Rivest *in all probability* played a significantly greater role in the murder of Floyd Jensen than he owned up to or testified to and that evidence compels us to hold that Rivest's perjured testimony materially breached the plea agreement." (Emphasis supplied.)

[11] "[W]e must determine as a fact whether the defendant's breach is such as to prevent the performance that is rendered by him from being 'substantial' performance. The question is often put thus: Does his breach go to the essence? If the breach is relatively minor and not 'of the essence,' the plaintiff is himself still bound by the contract; he can not abandon performance and get damages for a 'total' breach by the defendant." Corbin, *On Contracts* sec. 700, at 654 (1952).

"It is not always that a breach of contractual duty by one party to a bilateral contract discharges the duty of performance on the

breaches of contract entitle the non-breaching party to money damages but do not discharge the non-breaching party from performing its obligations under the contract. Other breaches, labeled material or substantial breaches, discharge the non-breaching party from performing its obligations under the contract. *Seidling v. Unichem, Inc.,* 52 Wis. 2d 552, 554, 191 N.W.2d 205 (1971); *Appleton State Bank v. Lee,* 33 Wis. 2d 690, 692–93, 148 N.W.2d 1 (1967).

The test of what is a material breach is necessarily imprecise and flexible. Comment, sec. 241, 2 *Restatement* (Second) Contracts 237 (1981). Labeling a breach as material is a shorthand way of saying that under the circumstances of the case the breach is of such a nature as to warrant discharging the non-breaching party from performing its obligations under the contract.

In a plea agreement case the court must be cautious in determining whether a breach is material, *i.e.,* whether the breach destroys the essential objective of the agreement thereby releasing the "innocent" party from fulfilling its promises. In a criminal case, unlike in the usual contract case, money damages cannot be awarded to the state to rectify the harm caused by the breach.[12]

part of the other. As the term 'breach' is used, a contractor who has committed a breach is guilty of a wrong for which some remedy is available, the remedy varying with the case. Being guilty of a wrong does not make him an outlaw or deprive him of all rights, even the rights that were created by the very contract that he breaks. This is true, in spite of many a contrary *dictum*, even when his breach is 'wilful'. Indeed, it seems best to say that breach by one party never discharges the other party, regarding breach merely as a wrong without regard to the extent and quality of its ill effects. When those 'effects' are so material to the interests of the other party that a mere judicial remedy is not sufficient to satisfy the requirements of justice as felt by the community, the legal duty of that other party is either suspended or discharged." Corbin, *On Contracts* sec. 1253 at 1013 (1952).

[12] *See Petition of Geisser,* 554 F.2d 698, 706 (5th Cir. 1977): "When a plea bargain is breached, the courts must fashion a

The obvious and sometimes the only remedy available to the state if the defendant breaches the plea agreement is to vacate the plea agreement. The court must therefore be cognizant of the impulse to find a remedy for every breach and to vacate the plea agreement in situations where such a drastic remedy is not warranted under either principles of contract law or considerations of due process or considerations of the sound and effective administration of the criminal justice system.

The majority opinion—correctly expressing disapproval of perjury—holds that the defendant's perjurious testimony constitutes a "material breach." The majority does not, however, explain how or why it reaches this conclusion other than to intimate that any perjurious testimony always justifies vacating the plea agreement. I do not condone perjury, and prosecutors should not condone perjury. But the state's remedy for punishing perjurious testimony is not limited to vacating the plea agreement. The state can charge the defendant with the felony of perjury.

On the basis of the peculiar combination of facts and circumstances in the case at bar, I conclude that the defendant has not committed a material breach, that is that the state should not be discharged from its obligations under the plea agreement.

First, the evidence shows, beyond a reasonable doubt, that the state viewed the defendant's agreement to testify in the Rodriguez trial as a secondary, indeed minor, term in the plea agreement. The defendant offered to testify as a state's witness in the absence of the agreement. The defendant's testimony was therefore not "of the essence" of the agreement. The key factor for the state's entering the agreement was not that the defendant was going to testify on behalf of the state but that the

remedy that insures the petitioner 'what is reasonably due in the circumstances' . . . Generally, the bargain is 'either specifically enforceable between the parties to the agreement or the plea is void.' " (Citations and emphasis omitted.)

state's attorney concluded, in the exercise of prosecutorial discretion, that fairness and justice did not require the defendant to be charged with murder if he was not a direct participant in the stabbing. 1 A.B.A., *Standards For Criminal Justice,* The Prosecution Function secs. 3–4.1, 3–4.2; The Defense Function secs. 4–6.1, 4–6.2 (2d ed. 1980). For a discussion of prosecutorial discretion, see *State v. Karpinski,* 92 Wis. 2d 599, 285 N.W.2d 729 (1979); *SCR* 20.34(2)(j), (k) (1982); Comment, *Justice Department's Prosecution Guidelines of Little Value to State and Local Prosecutors,* 72 J. Crim. L. & Criminology 955 (1981).

That the defendant's testimony on behalf of the state was a secondary aspect of the plea agreement is well documented in numerous places in the record. The assistant district attorney described the defendant's agreement to testify against Rodriguez as a secondary term of the agreement both at the hearing at which the guilty plea was accepted[13] and at the habeas corpus proceed-

---

[13] The assistant district attorney who negotiated the agreement on behalf of the state explained the plea agreement to the circuit court which accepted the defendant's guilty plea as follows:

"These [polygraph] examinations, Your Honor, along with the investigations done by the Sheriff's Department, indicate that Mr. Rivest at the time of the incident did not know, as I indicated before, that any harm was to be done to Mr. Jensen, he did not know that Mr. Rodriguez was armed with a knife and he intended to use this knife.

"Based on these factors, the defendant, pursuant to an agreement between myself and Mr. Tofte [defense counsel], would enter a plea to the charge of being a party to robbery. This carries a maximum penalty of a fine of not more than $10,000 or imprisonment not more than 10 years or both.

"In addition, the defendant has agreed to appear whenever requested and to give testimony against the juvenile who is charged with the actual stabbing death of Mr. Jensen.

"The reports and the police investigation and the statement of Mr. Rivest and the polygraph examination would indicate that as far as Mr. Rivest is concerned no additional charges will be brought as a result of this incident on June 5, 1978."

ing.[14] When the circuit court explained the terms of the plea agreement to the defendant before the court accepted the defendant's guilty plea, the court did not refer to the defendant's testimony in the Rodriguez trial at all. The circuit court referred only to the lie detector test.[15]

Finally, the assistant district attorney, in a letter dated May 30, 1979, in response to a discovery request by Rodriguez' attorney, set forth the factors underlying the plea agreement with the defendant and characterized the defendant's agreement to testify against Rodriguez as "not a major factor" in the plea agreement. The plea agreement hinged on the physical evidence and the defendant's statement confirmed by the polygraph.[16]

---

[14] The assistant district attorney said: "My main concern was: Did Mr. Rivest—or was Mr. Rivest involved in the direct stabbing of Floyd Jensen and to that extent as the statements are corroborated by the polygraph examinations given, I relied on these statements as true."

[15] The exchange between the circuit court which accepted the guilty plea and the defendant is as follows:

*"The Court:* Oh, yes. All right. Now, then you understand that there was a plea bargain. Under the circumstances, if you took the polygraph or lie detector test and passed it they would reduce it. You knew that?

*"The Defendant:* Yes."

This exchange was the circuit court's total discussion of the plea agreement other than the circuit court's questions designed to assure the court that the state had made no promises or threats and that no one had guaranteed the defendant the sentence he would receive.

[16] The letter states, *inter alia:*

"Mr. Rivest, as part of the plea negotiation, did agree to testify against Mr. Rodriguez in further proceedings. *This was not a major factor in not pursuing the murder charge for the reason that Mr. Tofte had indicated to our office from the start that his client was willing to testify against Mr. Rodriguez. The only factor in not issuing the murder charge against Mr. Rivest was the verification through polygraph examination that he did not, in fact, commit the actual murder.* Had Mr. Rivest failed the poly-

Second, as I stated previously, the assistant district attorney entered into the plea agreement with knowledge (actual or constructive) of the very evidence upon which the district attorney now bases his assertion that the defendant committed perjury. The assistant district attorney said he took the physical evidence and police investigation into account when he entered into the agreement.[17] In any event, the state must be deemed to have examined its own files and the investigator's files available to it before it entered into the plea agreement and to have satisfied itself as to the inconsistency between the defendant's statements and the other evidence then available.

Third, the district attorney's office obviously had doubts about the defendant's veracity in denying his participation in the killing. Hence the polygraph examination.[18] The defendant's statements which the state veri-

---

graph examinations, then there would have been no plea negotiation and the murder charge would have been forthcoming. It is my understanding that as long as all parties live up to the term of the plea negotiation as outlined by the record before Judge Harvey, then no murder charge against Mr. Rivest could be brought. *The entire plea negotiation hinges on the physical evidence and the statements given by Mr. Rivest as confirmed by the polygraph examinations indicating that he did not, in fact, commit the actual murder of Mr. Jensen.*" (Emphasis added.)

[17] *See* notes 13 and 16 *supra.*

[18] The first polygraph examiner reported as follows:

"There were no significant emotional disturbances indicative of deception on this subject's records on the following listed questions:

"1. (On June 5, 1978) did you stab Floyd Jensen in the back with a hunting knife? Answer: No

"2. Did you kill Floyd Jensen? Answer: No

"3. Did you stab Floyd Jensen with a knife? Answer: No

"4. Did you hit Floyd Jensen with that hunting knife? Answer: No

"It is the opinion of the examiner, based on this subject's polygraph records, that he is telling the truth on the above listed questions."

The second polygraph examiner reported as follows:

fied by the polygraph examination are substantially similar to the defendant's testimony which the state now alleges is perjurious. That further review of the evidence (evidence available at the time of the plea agreement) indicates that the polygraph result might have been wrong should not justify the state's repudiation of the plea agreement. The plea agreement was entered on the condition that the polygraph test be passed.[19] Defendant passed the test and testified in court in the same way as he had answered the questions during the polygraph test. Under these facts the state should not be able to reopen the plea agreement at a later date on the issue of

"As instructed per your letter of January 10, 1979 I asked Alan Rivist [sic] the following questions:

"1. Did you stab Lloyd Johnson [sic] with the hunting knife?

"2. Did you help Eddie Rodriguez stab Lloyd Johnson [sic]?

"3. Did you know ahead of time that Eddie Rodriguez was to stab Lloyd Johnson [sic]?

"4. Regarding the stabbing of Lloyd Johnson [sic], did you help do it.

"Mr. Rivist [sic] stated no to all of the above questions.

"It is my opinion that Mr. Rivist [sic] was truthful when he gave the above answers to the questions asked."

[19] *See* excerpts from the record at notes 13, 14, 15 and 16. *See also* the testimony of the assistant district attorney at the habeas corpus hearing that he relied not on defendant's truthfulness but on the polygraph tests to negotiate the agreement:

"*Q.* And did you rely, in making the agreement and in changing the charge and accepting the plea of Alan Rivest, did you rely on the statements of Alan Rivest as made to the police at the time of his apprehension and thereafter? *A.* I would have to say, sir, that I relied more on the two polygraph examinations as, you know, supporting those statements. *I don't think there is any way that I would have accepted the statements without the verification of the two exams.*

"...

"*Q.* And as you stated in your letter to Mr. Johnson of, I believe, May 30th, which has been testified to marked as an exhibit, it was his passing those two polygraphs which was the primary reason that Mr. Rivest was not charged with first degree murder; isn't that correct? *A.* Correct." (Emphasis added.)

defendant's veracity. See *People v. Reagan*, 395 Mich. 306, 235 N.W.2d 581 (1975).

Fourth, it appears from the record that the reason the state seeks to vacate the plea agreement is that a new district attorney, using hindsight, apparently determined that an assistant district attorney erred in entering into the plea agreement. Nevertheless the plea agreement was negotiated on behalf of the state by an assistant district attorney acting within his power, and the court should not vacate a plea agreement because the state later concludes the agreement was unwise.

Whether we like them or not, plea agreements play a significant role in the criminal justice system. See Note, *Guilty Plea Bargaining: Compromises By Prosecutors to Secure Guilty Pleas*, 112 U. Pa. L. Rev. 865 (1964). Since an estimated 90 percent of criminal convictions are the result of guilty pleas and since much of the work of the typical district attorney's office consists of participation in negotiations leading up to the guilty pleas, the effective and sound administration of the criminal justice system requires that the bench, the bar and the public have confidence that prosecutors conduct themselves properly in the negotiations leading to guilty pleas. 1 A.B.A., *Standards for Criminal Justice*, The Prosecution Function secs. 3–4.1 to 3–4.3; The Defense Function secs. 4–6.1, 4–6.2 (2d ed. 1980).

While engaging in plea bargaining the prosecutor, at a minimum, must evaluate all the information then available relating to the charge, to the defendant's background, and to any other factors bearing on whether there should be a plea or a trial. The state, the defendant and the public must be able to treat a conviction on a guilty plea as the final judgment. Circuit court time is taken in entering the guilty plea. Additional circuit court and appellate court time will be taken if the state seeks to vacate the guilty plea. If the guilty plea is va-

cated the defendant may be brought to trial many years after the crime occurred; in the case at bar almost four years have elapsed since the murder. Witnesses may be dead or gone, or their memories may have faded. Both the state and the defendant must enter a plea agreement viewing it as the final step, not an easily reversible step.

In this case the state got exactly what it should have expected when it entered the agreement. The state knew what the defendant's testimony would be and the defendant's testimony comports with the state's expectations. The district attorney does not argue that he is relying on any "newly discovered" evidence to prove defendant's perjury. The district attorney's office had eight months—from June 5, 1978, when the killing occurred, until February 6, 1979, when the plea agreement was revealed in circuit court—to verify the defendant's testimony. The assistant district attorney did verify the defendant's testimony with a polygraph in which the defendant "passed" the very questions in issue now.

In our system of law the state must be held to a high, strict standard that it fulfill its prosecutorial promises, not merely to vindicate the expectation of the defendant as to state behavior but more importantly to vindicate the expectation of the public as to state behavior and to promote the sound and effective administration of the criminal justice system. As the United States Court of Appeals said in *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972) :

"There is more at stake than just the liberty of this defendant. At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice . . . ." Quoted with approval in *Cooper v. United States*, 594 F.2d 12, 20 (4th Cir. 1979).

In the case at bar, the public has an interest in having the defendant be convicted of the crime which he committed, not a greater crime, nor a lesser crime. The public has an interest in punishing perjury. The public has an interest in requiring the prosecutor's office to weigh carefully all factors before entering a plea agreement. The public has an interest in finality of convictions. The public has an interest in assuring individuals their constitutionally granted rights. The public has an interest in having the state abide by its promises. For the reasons I have set forth, I conclude that these interests of the public, which are encompassed in the phrase the effective and sound administration of criminal justice, are, on balance, best served in the case at bar by not vacating the guilty plea.

For the foregoing reasons I dissent. I would reverse the order of the circuit court vacating the plea agreement.

I am authorized to state that Justice Nathan S. Heffernan joins me in this dissent.